UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

DANA SPIRES, GLENN GRANT, SUSAN
MOHLE, and TOM MIRANDA on Behalf of
Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

CASE NO: 2:16-cv-00616-RMG

DAVID R. SCHOOLS, WILLIAM A.
EDENFIELD, JR., ROBERT G. MASCHE,
JOSEPH T. NEWTON III, BURTON R.
SCHOOLS, PIGGLY WIGGLY CAROLINA
COMPANY, INC. & GREENBAX
ENTERPRISES, INC. EMPLOYEE STOCK
OWNERSHIP PLAN AND TRUST PLAN
COMMITTEE, JOANNE NEWTON AYERS,
MARION NEWTON SCHOOLS, and JOHN
DOES 1-10,

Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF
SETTLEMENT CLASS, APPROVAL OF NOTICES OF SETTLEMENT,
PRELIMINARY APPROVAL OF
THE PLAN OF ALLOCATION, AND SETTING OF FAIRNESS HEARING**

WYCHE, P.A.

John C. Moylan, III (D.S.C. Id. No. 5431)
Alice W. Parham Casey (D.S.C. Id. No. 9431)
801 Gervais Street, Suite B (29201)
PO Box 12247
Columbia, SC 29211-2247
Telephone: (803) 245-6542
Facsimile: (803) 254-6544

Henry L. Parr, Jr. (D.S.C. Id. No. 2984)
Eric B. Amstutz (D.S.C. Id. No. 0942)
Wade S. Kolb, III (D.S.C. Id. No. 11485)
44 East Camperdown Way (29601)
PO Box 728
Greenville, S.C. 29602-0728
Telephone: (864) 242-8200
Telecopier: 864-235-8900

Attorneys for Plaintiffs

KELLER ROHRBACK LLP

Gary A. Gotto (Admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: 602-248-0088
Telecopier: 602-248-2822

Erin M. Riley (Admitted *pro hac vice*)
David J. Ko ( Admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Telecopier: (206) 623-3384

Attorneys for Plaintiffs

# I.  INTRODUCTION

Plaintiffs Dana Spires, Glenn Grant, Susan Mohle and Tom Miranda (the "Plaintiffs" or "Named Plaintiffs") respectfully move for an Order: (a) granting preliminary approval of the Settlement[1]; (b) conditionally certifying the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(l); (c) approving the forms for the mailing and publication of notice of Settlement; (d) granting preliminary approval of the proposed Plan of Allocation; and (e) setting a date and time for the Fairness Hearing with respect to the Settlement and related deadlines as set forth in the proposed preliminary approval order ("Preliminary Approval Order"), attached as Exhibit 1 to the Class Action Settlement Agreement (the "Settlement Agreement"), dated May 22, 2018, filed herewith.  This motion is made unopposed.

Under the Settlement Agreement, a Settlement Fund consisting initially of an Original Cash Amount of $5.2 million will be established for the benefit of the participants in and beneficiaries of the Plan (defined below).  The Original Cash Amount will be deposited into the Settlement Fund, an interest-bearing account, following final Court approval. The Settlement Agreement also provides for the future deposit into the Settlement Fund of Additional Cash Amounts estimated by the Defendants to range from $2.475 million to $3.45 million in the aggregate.

The Settlement was reached after the filing and Court resolution of Motions to Dismiss, comprehensive discovery, and substantial arm's-length negotiations, including an in-person mediation with mediator Thomas J. Wills, Esq., an experienced and highly-respected mediator. The Settlement will provide significant benefits to the Settlement Class, while removing the risks and delays associated with further litigation.

---

[1] Except as indicated, the capitalized terms used herein shall have the meanings ascribed to them in the Settlement Agreement filed herewith.

## II. BACKGROUND OF THE LITIGATION

The Named Plaintiffs are participants in the Piggly Wiggly Carolina Company, Inc. & Greenbax Enterprises, Inc. Employee Stock Ownership Plan and Trust (the "Plan"). Two of the Named Plaintiffs initiated this Action individually and on behalf of all persons similarly situated by filing a complaint on February 26, 2016 in the United States District Court for the District of South Carolina (the "Court"). The complaint alleged that Defendants David R. Schools, William A. Edenfield, Jr., Robert G. Masche, Joseph T. Newton III and Burton R. Schools (the "Piggly Wiggly Defendants") functioned as fiduciaries of the Plan during the Class Period. The complaint alleged that the Piggly Wiggly Defendants breached their fiduciary obligations under the Employee Retirement Income Security Act, as amended ("ERISA"), and committed other violations of ERISA. The complaint further alleged that Defendants Joanne Newton Ayers and Marion Newton Schools (the "Noteholder Defendants") participated in the repayment of certain notes payable in violation of ERISA.

The Piggly Wiggly Defendants and the Noteholder Defendants filed Motions to Dismiss on May 6, 2016. On May 23, 2016, all four Named Plaintiffs filed the First Amended Complaint (the "Complaint").

Count One of the Complaint asserts claims pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a), against the Piggly Wiggly Defendants for various breaches of fiduciary duty in their roles as members of the Plan Committee, members of the Company's Board of Directors, and Plan Trustees, including the claim that the Piggly Wiggly Defendants should have changed the Board and management of the Company during the early part of the Class Period and that the Piggly Wiggly Defendants engaged in improper self-dealing transactions. Count Two asserts claims pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a) against the Piggly Wiggly Defendants for various breaches of fiduciary duty in connection with not bringing

derivative actions against the management and Board of the Company. Count Three asserts claims pursuant to ERISA §§ 405 and 409, 29 U.S.C. §§ 1105 and 1109, against the Piggly Wiggly Defendants based upon their liability as alleged co-fiduciaries for those acts and omissions complained of in the other counts. Count Four asserts claims pursuant to ERISA §§ 406(a)-(b) and 409, 29 U.S.C. §§ 1106(a)-(b) and 1109, against the Piggly Wiggly Defendants for engaging, directly or indirectly, in certain transactions prohibited under ERISA. Last, Count Five asserts claims against all the Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for injunctive and equitable relief for various alleged acts and omissions in violation of ERISA as set forth in the other Counts.

On June 20, 2016, the Piggly Wiggly Defendants and the Noteholder Defendants filed motions to dismiss the Complaint. On September 19, 2017, the Court granted in part and denied in part these Motions to Dismiss and issued a detailed Order. On October 3, 2017, the Piggly Wiggly Defendants and the Noteholder Defendants filed Answers to the Complaint. On November 3, 2017, the Court entered its Amended Scheduling Order.

Thereafter, the parties engaged in comprehensive discovery, including negotiating discovery protocols, exchanging discovery related correspondence, serving and responding to document production requests and interrogatories, reviewing produced documents, serving *subpoenas duces tecum* on numerous third parties and reviewing the documents produced in response to them, taking depositions of fifteen individuals (parties and non-parties), and submitting expert reports. In conjunction with this discovery, Plaintiffs' Counsel established an electronic document depository and implemented a system of coding and categorizing documents relevant to the claims in the Complaint. This assisted Plaintiffs' Counsel in reviewing the voluminous document production made by the Defendants and third parties.

On March 28, 2018, the parties participated in an all-day in-person mediation with mediator Thomas J. Wills, Esq. Negotiations continued thereafter with the assistance of the mediator. On April 13, 2018, the proposed Settlement was agreed upon.[2]

### III. TERMS OF THE SETTLEMENT

The terms and conditions of the Settlement are set forth in the Settlement Agreement. The principal terms of the Settlement are:

**A.     Settling Defendants.** All individual Defendants[3] named in this action ("Action") are parties to the Settlement.

**B.     The Plan Affected.** The Plan covered by the Settlement is the Piggly Wiggly Carolina Company, Inc. & Greenbax Enterprises, Inc. Employee Stock Ownership Plan and Trust (the "Plan").

**C.     Settlement Class.** The Settlement Agreement contemplates that the Court will certify the following settlement class (the "Settlement Class" or "Class") under Fed. R. Civ. P.23(a) and (b):

> All persons who were vested or non-vested participants in or beneficiaries of the Plan at any time from February 26, 2008 through the present (or their Successors-In-Interest). The "Settlement Class" shall not include any of the Individual Defendants (defined to include all Defendants who are individuals) or their respective Successors-In-Interest.

Settlement Agreement § I.1.39.

**D.     Settlement Fund.** The Plaintiffs agreed to settle all claims against the Defendants for the Original Cash Amount of $5.2 million, plus Additional Cash Amounts to be paid in the

---

[2] Additional factual background supplying further bases for this Motion can be found in the Joint Declaration of Plaintiffs' Counsel, filed herewith.

[3] The following individuals were named as Defendants in the First Amended Complaint, filed May 23, 2016: David R. Schools, William A. Edenfield, Jr., Robert G. Masche, Joseph T. Newton III, Burton R. Schools, Joanne Newton Ayers, and Marion Newton Schools (collectively, the "Individual Defendants").

future, all to be deposited in a Settlement Fund, which, less approved attorneys' fees and expenses, shall be for the benefit of the Plan's participants and beneficiaries. Settlement Agreement § VII.7.1.2 & 7.1.3.

      **E.**    **Released Claims.**  In exchange for the Settlement Fund, Plaintiffs have agreed to release Plaintiffs' and the Settlement Class's claims against the Defendants. The details of the release are set forth in § III.3.1 of the Settlement Agreement

      **F.**    **Plan of Allocation.**  The Net Proceeds will be allocated to Plan accounts of Settlement Class members pursuant to a detailed Plan of Allocation, submitted for preliminary approval herewith as Exhibit 3 to the Settlement Agreement. In general terms, the Net Proceeds will be allocated to Settlement Class members on a *pro rata* basis, in proportion to the decline in value of the Company stock allocated to their Plan accounts.

      **G.**    **Notice.**  As noted above, a proposed Preliminary Approval Order is filed together with this Memorandum. The Preliminary Approval Order provides for the following notices:

        **(a)**    A Class Notice (Exhibit A), to be mailed to the last known addresses of all Class members, and to be published on a website established by Plaintiffs' Counsel; and

        **(b)**    A Legal Notice (Exhibit B), to be published in *The Charleston Post & Courier* and *The State*.

## IV.  DISCUSSION

### A.    PRELIMINARY APPROVAL OF SETTLEMENT

### 1.    The Law Favors and Encourages Settlements

The Plaintiffs present this Settlement for preliminary review under Fed. R. Civ. P. 23(e), which requires Court approval of any class action settlement, the issuance of notice in a reasonable manner to the Settlement Class members, and a finding by the Court following a hearing that the Settlement is "fair, reasonable, and adequate."  *Id*.  For the reasons discussed below, preliminary approval under this rule is appropriate at this time.

The settlement of complex class litigation is favored by the courts. *In re Deepwater Horizon,* 739 F.3d 790, 807 (5th Cir. 2014) ("Particularly in class action suits", there is an "overriding       public       interest       in       favor       of       settlement.").  *See also Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).  When reviewing a proposed settlement in the context of a preliminary approval, courts make only a preliminary determination regarding the fairness, adequacy, and reasonableness of settlement terms prior to allowing notice to be sent to the potential class.   In making this preliminary determination, the Court's function is merely to ascertain whether there is "probable cause" to notify class members of the proposed settlement and to proceed with a fairness hearing. *In re Mid-Atl. Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1383-84 (D. Md. 1983) (citing *Manual for Complex Litigation* § 1.46).   When a proposed settlement appears to fall "within the range of possible approval," it is appropriate to issue preliminary approval and direct notice to members of the settlement class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citations omitted).

Here, there is probable cause to notify the settlement class of the proposed settlement and to proceed with a fairness hearing. The proposed Settlement was negotiated at arm's-length following motions to dismiss, resolution of those motions, and the completion of the Plaintiffs' fact discovery by fully-informed counsel collectively experienced in complex ERISA and other class actions. The proposed Settlement provides $5.2 million, plus additional amounts, less Court-approved fees and expenses, for distribution to eligible Settlement Class members. The proposed Settlement is unquestionably beneficial to the Settlement Class, and its terms are plainly "within the range of possible approval." *Id.* (citations omitted).

Under these circumstances, a presumption of fairness attaches to the proposed Settlement. *See Wal-Mart*, 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (quoting *Manual for Complex Litigation* (Third) § 30.4 (1995)) (internal quotation marks omitted)). This initial presumption of fairness applies with special force here because the Settlement was reached with the assistance of a highly experienced mediator.

### 2.    The Settlement Satisfies this Circuit's Criteria for Class Action Settlements

The Fourth Circuit has adopted a bifurcated analysis that courts should undertake in deciding whether to approve a proposed settlement of a class action. This inquiry analyzes a settlement's "fairness", and, separately, its "adequacy." *See In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-159 (4th Cir. 1991). Each test is satisfied here.

### (a)    Fairness

In *In re Jiffy Lube.,* 927 F.2d at 159, the Fourth Circuit laid out four factors that courts should consider in determining a settlement's fairness: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances

surrounding the negotiations, and (4) the experience of counsel in the area of … class action litigation." An analysis of these factors as applied to this case leads to the conclusion that the settlement is fair.

> (1)    Fairness Factors one and two: the posture of the case at the time settlement was proposed, and the extent of discovery that has been conducted.

There is no litmus test for determining how much work on a class action case is sufficient for settlement to be found reasonable and appropriate. Whatever the measure, however, it is satisfied here. Settlement was reached in this case at a mature stage in litigation, the parties having engaged in motions to dismiss, extensive fact discovery (and exchange of expert reports), and multiple depositions.

Plaintiffs have developed a comprehensive understanding of the key legal issues through the pleadings and motions-to-dismiss stages and discovery regarding the facts and claims in this Action. In terms of discovery, as of the time of the Settlement, Plaintiffs' Counsel's efforts included reviewing documents culled from approximately two and a half million pages of documents produced in this Action, taking or participating in depositions of fifteen individuals (parties and non-parties), and analyzing studies performed by their experts and Defendants' experts regarding the claims in the Action. Defendants' motions to dismiss were fully briefed and have been ruled upon in a detailed Order by the Court. Having completed fact discovery and litigated through motions to dismiss, the parties have conducted "sufficient … discovery and investigation to fairly evaluate the merits of [the parties'] positions during settlement negotiations." *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995).

> (2)    Fairness Factor three: the circumstances surrounding the negotiations.

The parties reached settlement as a result of mediation with Thomas J. Wills, Esq., a highly experienced and well respected mediator. On March 28, 2018, the parties participated in an all-

day in-person mediation with the mediator. Thereafter, with the mediator's assistance, the parties continued negotiations and reached agreement on the major terms of settlement on April 13, 2018.

(3) Fairness Factor four: the experience of counsel in the area of class action litigation.

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *In re Serzone Prod. Liab. Litig.,* 231 F.R.D. 221, 239, 244 (S.D.W. Va. 2005).

Keller Rohrback has extensive experience litigating ERISA class actions such as this one, as well as extensive experience litigating class actions in general. Wyche attorneys have a long history of involvement with class action litigation, primarily outside of the ERISA context, as both defense and plaintiffs' counsel. *See* Joint Declaration of Plaintiffs' Counsel.

There is a "strong initial presumption" that an arms-length settlement is fair if it is arrived at by counsel experienced in the type of litigation involved, on the basis of sufficient information concerning the claims at issue. *Feder v. Harrington,* 58 F.R.D. 171, 174-75 (S.D.N.Y. 1972).

**(b) Adequacy**

In *Jiffy Lube,* the Fourth Circuit laid out five factors that courts should consider in determining a settlement's adequacy: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." 927 F.2d at 159.

(1) Adequacy Factor one: the relative strength of the Plaintiffs' case on the merits.

The Plaintiffs believe strongly in their claims and are optimistic regarding their chances for success.  In the Plaintiffs' view, this case presents a failure by the Plan's fiduciaries to protect the participants from Plan losses that occurred.

The Plaintiffs assert that (a) by March 2010 or, at the latest, March 2011 (following several years of significant Company financial losses and the failure by Company management to guide the Company to profitability), the Piggly Wiggly Defendants, as Plan fiduciaries, should have changed the Company's Board of Directors and top management to include independent knowledgeable individuals, who with the assistance of experienced investment bankers and other experts, could have reversed the Company's downward trajectory; (b) the Piggly Wiggly Defendants were paid excessive compensation and benefits in breach of their fiduciary duties under ERISA; (c) the Piggly Wiggly Defendants caused a number of the Company's stores to pay excessive rent, improperly enriching three of the Piggly Wiggly Defendants who owned indirect equity interests in the landlord; and (d) all the Defendants authorized or participated in a March 2014 transaction that violated ERISA pursuant to which the Company acquired at an excessive purchase price notes payable owed by the Plan to various individuals who are, or are related to, the Piggly Wiggly Defendants.

      (2)    <u>Adequacy Factor two: the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial.</u>

Defendants have vigorously defended this case at all stages of its litigation, and Plaintiffs would face significant defenses should the case go to trial. Defendants assert that (a) the Company's financial losses were primarily due to the Great Recession, significantly increased competitive pressures generated by Wal-Mart and other well capitalized grocery store chains, and other factors outside of their control; (b) during the relevant time period, the Company engaged multiple outside experts to analyze and recommend changes to the Company's business, which

recommendations were implemented by the Piggly Wiggly Defendants; but the Company could not be turned around, despite the Piggly Wiggly Defendants' best efforts; (c) with the assistance of outside experts, the Company sold substantially all of its assets, which was the best possible outcome for the Company and the Plan participants that could have been achieved under the difficult circumstances the Company was facing; (d) as of March 2010 or March 2011, it was premature to conclude that a change in the Board's or top management's composition was needed in light of the significant changes being implemented by the Board and top management to turn the Company around; (e) it is speculative to assert that a change in the Company's Board of Directors or top management would have altered the Company's future performance; (f) the compensation and benefits provided to the Piggly Wiggly Defendants were within the range of reasonableness; (g) the rents paid by the Company to the related-party landlord were reasonable and not excessive; (h) the three Piggly Wiggly Defendants' ownership of indirect interests in the landlord was appropriate; and (i) the notes payable transaction benefited the Plan, and thereby the Plan's participants and beneficiaries, and did not violate ERISA.

     (3)     <u>Adequacy Factor three: the anticipated duration and expense of additional litigation</u>.

Continued litigation in this case would unquestionably be time consuming and expensive. Plaintiffs' and Defendants' experts have not yet been deposed, nor have the parties filed dispositive motions or Daubert motions. Trial would likely last at least one or more weeks during the summer of 2018. Appeals could stretch the process into years. Further, Defendants and Plaintiffs collectively have already incurred several million dollars' worth of legal fees and expenses, an amount which would significantly increase should litigation in this case continue.

     (4)     <u>Adequacy Factor four: the solvency of the defendants and the likelihood of recovery on a litigated judgment</u>.

11

The availability of funds to satisfy any ultimate judgment on the merits is a relevant factor in determining the appropriateness of a settlement. *In re Jiffy Lube*, 927 F.2d at 159.

Here, the Defendants – all of whom are individuals – face tens of millions of dollars of potential liability as a result of this Action, if the Court found in Plaintiffs' favor and accepted Plaintiffs' damages claims. While the Piggly Wiggly Defendants have fiduciary liability insurance coverage with respect to the fiduciary breach claims in the Complaint, the amount of this coverage has been significantly reduced by the attorneys' fees and litigation expenses incurred by the Piggly Wiggly Defendants, and continued litigation could further reduce or even eliminate this coverage. In other words, a failure to settle would create a significant risk that insufficient or no insurance coverage would be available to pay for any judgment that the Plaintiffs might obtain against the Piggly Wiggly Defendants.

Considering the present and time value of money, the probability of lengthy and costly litigation in the absence of settlement, the risk that the Plaintiffs would not succeed in proving liability against the Defendants, the range of possible recovery at trial, and the potential that significant amounts of fiduciary liability insurance would be spent in further litigation and thus not be available to pay any judgment obtained at trial, the Settlement is well within the range of reasonableness. As the Tenth Circuit aptly summarized in approving a class settlement: "As to the fairness of the settlement agreement…[B]ecause of the financial condition of [the company involved] and the very real possibility that protracted litigation may render [the company] unable to satisfy a judgment, it is in the best interest to settle rather than engage in protracted litigation, particularly in light of the wasting nature of the [insurance] Policy." *Sec. & Exch. Comm'n v. DeYoung*, 850 F.3d 1172, 1178 (10th Cir. 2017). Similarly, the court in *Dartell v. Tibet Pharm., Inc.,* No. CV 14-3620, 2017 WL 2815073, at *6 (D.N.J. June 29, 2017) noted,

> Importantly, the settlement proceeds here come from a wasting insurance policy. This means that the policy limit was reduced by payment of defense costs while the matter was being litigated. As litigation continues, less money is available to the class. If the parties did not settle and instead continued with discovery and motions for summary judgment, the insurance funds available for any potential settlement would be quickly diminished and perhaps exhausted. Accordingly, this factor weighs in favor of the fairness of the settlement.

*See also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road." (citation omitted)). Accordingly, the Settlement is eminently reasonable in light of the particular circumstances of this case.

(5)    Adequacy Factor five: the degree of opposition to the settlement.

The Named Plaintiffs approve of the Settlement. Plaintiffs' Counsel, based on their experience with similar cases, anticipate that the Settlement Class will be in favor of the Settlement. Nonetheless, it will not be possible fully to analyze this last factor until after notice has been provided to the Class and members of the Class have had an opportunity to submit objections, if any, to the Settlement.

**B.    CLASS CERTIFICATION**

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619 (1997), the United States Supreme Court recognized that "[s]ettlement is relevant to a class certification." *Id.* at 619. As

13

the Court explained, "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Id.* at 620 (citing Fed. Rule Civ. Proc. 23(b)(3)(D)). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *See In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge."(citation omitted)). *Id.*

For purposes of the Settlement only, Defendants have agreed not to challenge certification of the Settlement Class, and pursuant to § I.1.39 and II.2.1 of the Settlement Agreement, the parties have stipulated to a Settlement Class. Accordingly, Plaintiffs set forth the legal and factual bases for certification of the Settlement Class, for settlement purposes only, pursuant to Fed. Rule. Civ. Proc. 23(a).

### 1.     Plaintiffs Satisfy All Prerequisites for Class Certification

Rule 23(a) provides that a class may be certified if: (1) the class members are so numerous that joinder of all members is impracticable; (2) the action addresses questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representative parties will fairly and adequately protect the class interests.

#### (a)     Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all class members is "impracticable." Fed. Rule. Civ. Proc. 23(a); *see also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *Glob.*

14

*Crossing*, 225 F.R.D. at 451 (finding numerosity standard met in analogous ERISA breach of fiduciary duty case). While the Fourth Circuit does not have a bright-line rule in regards to numerosity (*see Speaks v. U.S. Tobacco Coop., Inc.,* No. 5:12-CV-729-D, 2018 WL 988080, at *16 (E.D.N.C. Feb. 20, 2018), *judgment entered* No. 5:12-CV-729-D, 2018 WL 1089995 (E.D.N.C. Feb. 27, 2018) (citing to *Kelley v. Norfolk & W. Ry.,* 584 F.2d 34, 35 (4th Cir. 1978) (per curiam))), this Action, affecting thousands of Plan participants and beneficiaries (ascertainable from records kept with respect to the Plan), easily satisfies the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (between 46 and 60 class members sufficient for numerosity), *cert. denied*, 470 U.S. 1028 (1985). It would be impracticable to join each of these Class members in this Action.

### (b)    Commonality

The threshold commonality inquiry is whether there are any questions of fact or law common to the class. Fed. R. Civ. P. 23(a)(2); *see also Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000) ("Rule 23(a)(2) does not require that all factual or legal questions raised in a litigation be common, so long as at least one issue is common to all members… Factual differences among the class members' cases do not violate the rule, so long as a common legal theory is shared." (citing *Holsey v. Armour & Co.*, 743 F.2d 199, 216–17 (4th Cir. 1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, (1985) and *Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1275 (4th Cir.1981))). By their very nature, ERISA actions seeking damages incurred by an ERISA plan usually present common questions of law and fact, and are therefore frequently certified as class actions. "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (citing *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993)).

In this case there are several common questions with respect to each Settlement Class member, including:

- whether the Piggly Wiggly Defendants were fiduciaries of the Plans;
- whether the Defendants breached their fiduciary duties or otherwise violated ERISA;
- whether the Plan and thereby the participants in and beneficiaries of the Plan were damaged by such breaches or violations; and
- whether the Settlement Class is entitled to damages, and the proper measure of damages.

Because these questions concern the common issues of fiduciary responsibilities owed to the participants and ERISA duties, "these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2)." *Von Moore v. Simpson,* No. 96 CV 2971, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997).

### (c)    Typicality

Typicality does not require the plaintiff's claims to be perfectly identical to the claims of class members, but ensures that the class representative "possess[es] the same interest and suffer[s] the same injury as the class members." *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006)). "Typicality exists where the claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *Glob. Crossing*, 225 F.R.D. at 452 (citation omitted).

The typicality requirement is often met in proposed class actions brought for breaches of fiduciary duty under ERISA. *See, e.g., Koch v. Dwyer,* No. 98 CIV. 5519 (RPP), 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001) (finding typicality of claims in ERISA action alleging breach of fiduciary duties); *Glob. Crossing*, 225 F.R.D. at 452 (finding typicality of claims: "the class

representatives' and the class members' claims arise from the same alleged course of conduct and are based on the same legal theories.").

The Named Plaintiffs' claims are typical of those of the proposed Settlement Class. Each Named Plaintiff was a participant in the Plan during the Class Period, and Company stock was allocated to each Named Plaintiff's Plan account. All members of the Settlement Class, including the Named Plaintiffs, sustained the same type of alleged injury described in the Complaint due to the Defendants' alleged breaches of their fiduciary duties and other violations of ERISA. Further, the Named Plaintiffs are entitled under ERISA to bring a claim for plan-wide relief. *See* 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty goes to the plan). Because the Named Plaintiffs and the absent Class members seek the same relief for the same alleged wrongs by the same Defendants, the Named Plaintiffs' claims are typical of the claims of the Settlement Class within the meaning of Rule 23(a)(3).

### (d)    Adequacy

Rule 23's adequacy determination requires the Court to consider whether the Named Plaintiffs' interests may be antagonistic to the other members of the Settlement Class and whether the Plaintiffs' Counsel are "qualified, experienced and generally able to conduct the litigation." *In re Serzone*, 231 F.R.D., at 238.

With regard to the claims in the Action, the Named Plaintiffs have no interests antagonistic to those of the absent Settlement Class members. Where plaintiffs and class members all share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and the other class members. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

In addition, the Named Plaintiffs have retained attorneys that are highly qualified to conduct this litigation. The law firms of Wyche and Keller Rohrback have extensive experience,

17

collectively, litigating complex ERISA breach of fiduciary duty and other class actions. *See* Joint Declaration of Plaintiffs' Counsel. Plaintiffs' Counsel stand "ready, willing and able to devote the resources necessary to litigate this case vigorously," *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996), and indeed have already invested substantial resources in the prosecution of this litigation.

**2.    The Class May be Properly Certified Under Rule 23(b)(1)**

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b), under which, among other grounds, a class may be certified if:

> (1)    the prosecution of separate actions by or against individual members of the class would create a risk of:
>
> > (A)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. . . .

Fed. Rule. Civ. Proc. 23(b)(1).

"An action may be brought as a class action under Rule 23(b)(1) if individual adjudication of the controversy would prejudice either the party opposing the class, (b)(1)(A), or the class members themselves, (b)(1)(B)." *Zimmerman v. Bell,* 800 F.2d 386, 389 (4th Cir. 1986). *See also In re Ikon Office Sols., Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). Certifications under both sections of Rule 23(b)(1) are common in ERISA cases because of the defendants' alleged "unitary treatment" of the individual members of the proposed Class. *Id.* (citation omitted). *See also* Fed. Rule. Civ. Proc. 23(b)(l)(B) advisory committee's notes (1966 Amendment)

(certification under 23(b)(1) appropriate in cases charging breach of trust by fiduciary to large class of beneficiaries).

By its nature, this Action is a representative one. "Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation . . . presents a paradigmatic example of a (b)(l) class." *Glob. Crossing*, 225 F.R.D. at 453 (citations omitted). Due to the "plan-wide" relief ERISA offers for violations of duties owed to covered plan participants, class treatment under Rule 23(b)(1) is appropriate. *See Ikon*, 191 F.R.D. at 466 ("[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. There is also risk of inconsistent dispositions that would prejudice the defendants . . ." (citations omitted)).

Thus, although certification of the Settlement Class is appropriate under the other subdivisions of Rule 23(b) as well, the Court should certify this Class under Rule 23(b)(1). *See, e.g.*, *Reynolds v. Nat'l Football League*, 584 F.2d 280, 284 (8th Cir. 1978) ("When the choice exists between [23](b)(l) and [23](b)(3) certification, generally it is proper to proceed under (b)(l) exclusively in order to avoid inconsistent adjudication or a compromise of class interests.")

### 3.    Plaintiffs' Counsel Easily Meet the Requirements of Rule 23(g)

Fed. Rule. Civ. Proc. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will adequate represent the class. Plaintiffs' Counsel have done substantial work to identify, investigate, and prosecute the claims in this Action. They have prepared a detailed and thorough complaint and an amended complaint, extensively briefed the many complex and novel issues in this case, conducted extensive document and deposition discovery, consulted with experts, and engaged in substantial and ultimately successful negotiations with the Defendants and their experienced defense counsel. Moreover, Plaintiffs'

Counsel, collectively, have considerable experience in handling class actions, other complex litigation, and claims of the type asserted in this Action. *See* Joint Declaration of Plaintiffs' Counsel. Plaintiffs' Counsel's extensive efforts in prosecuting this Action together with their background and experience in ERISA class action litigation satisfy the requirements of Rule 23(g).

C.    **THE PROPOSED FORMS OF NOTICE SATISFY RULE 23 AND DUE PROCESS**

"Approval of a class settlement requires the court to ensure that both procedural and substantive fairness are achieved. Procedural fairness is accomplished by providing court-approved notice of the proposed settlement to those whose rights may be affected by the settlement and by affording them an opportunity to be heard about the settlement." *DeWitt v. Darlington Cty., S.C., No. 4:11-CV-00740-RBH*, 2013 WL 6408371, at *4 (D.S.C. Dec. 6, 2013).

As several courts have noted, the nature of an ERISA class action brought on behalf of a plan pursuant to ERISA § 502(a)(2) precludes an "opt out" option. *See Gruby*, 838 F. Supp. at 827 ("[A]s Fund participants may bring an action only in a representative capacity on behalf of the entire Fund, the proposed class must include all Fund participants...").

Even though the Settlement Class members are eligible to receive a benefit from the Settlement regardless of their actual notice, courts typically require that absent class members in ERISA breach-of-fiduciary-duty actions receive notice, as well as the opportunity to object. The form of notice must be sufficient to accomplish this purpose. "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *Prudential*, 164 F.R.D. at 368. *See also Brooks v. GAF Materials Corp.,* No. 8:11-CV-00983-JMC, 2013 WL 2109559, at *2 (D.S.C. May 15, 2013) ("notice 'must be sent to all class members whose names and addresses may be ascertained through reasonable effort.'"

20

(quoting *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 173 (1974)). "For non-opt out cases, such as the ERISA Actions, Rule 23 requires only such unspecified 'appropriate notice' as 'the court may direct.'" *Glob. Crossing*, 225 F.R.D. at 448 (quoting Fed. Rule. Civ. Proc. 23(c)(2)(A)).

Here, the form and method of notice of proposed settlement agreed to by the Plaintiffs and the Defendants satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(l)(B). The Plaintiffs' and Defendants' "Notice Plan" consists of: (1) the Class Notice to be mailed to the last known address of each Settlement Class member (Exhibit A to the Preliminary Approval Order); (2) the Legal Notice to be published in *The Charleston Post & Courier* and *The State* (Exhibit B to the Preliminary Approval Order); and (3) the creation of a dedicated website administered by or on behalf of Plaintiffs' Counsel to provide current information to Settlement Class members. The Notice Plan is intended to fully inform the Settlement Class members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.

The Class Notice to be mailed provides detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Plaintiffs' Counsel's intent to request attorneys' fees and reimbursement of expenses; and (3) detailed information about the Released Claims. In addition, the Class Notice provides information about the Fairness Hearing date, the Settlement Class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information. The Class Notice also provides potential class members with contact information for Plaintiffs' Counsel, and provides: (1) a toll-free number where potential Class members may ask questions or learn about the Settlement; (2) an email address for inquiries; and (3) a website address to receive further information. The Legal Notice gives notice by publication of the Settlement.

The proposed forms of notice here - direct mail, newspaper publication, and an internet website - are similar to those successfully used in numerous other class settlements. Such forms of notice "fairly, accurately, and neutrally describe the claims and parties in the litigation ... the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989), *cert. denied*, 498 U.S. 972 (1990). Because the Settlement Class does not allow for opting out, all Settlement Class members will be eligible to receive a distribution from the Settlement regardless of their actual Notice. Accordingly, the proposed form of notice satisfies the due process requirements of Fed. R. Civ. P. 23.

## D.    THE PROPOSED PLAN OF ALLOCATION IS REASONABLE AND SHOULD BE GIVEN PRELIMINARY APPROVAL

A plan of allocation is a method to allocate the net settlement proceeds among Settlement Class members. A plan of allocation must "meet the standards of fairness, reasonableness, and adequacy." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009). To warrant approval, an allocation formula need only have a "reasonable and rational basis," particularly if recommended by experienced and competent class counsel. *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 258.

Here, the proposed Plan of Allocation was designed by experienced Plaintiffs' Counsel who have prepared similar plans for other cases. *See* Joint Declaration of Plaintiffs' Counsel. The proposed Plan of Allocation provides a recovery to the Class, net of administrative expenses, attorneys' fees and other expenses that the Court may choose to award, on a *pro rata* basis according to the decline in value of the Settlement Class members' respective shares of Company stock held by the Plan. No Settlement Class member or group of Settlement Class members is

singled out for either disproportionately favorable or unfavorable treatment; all participate in the recovery pursuant to the Plan of Allocation in the same manner.

The two basic features of the proposed Plan of Allocation are that (1) each Settlement Class member receives a share of the Net Proceeds based approximately on the decline in value of the Company stock held in his or her Plan account over the Class Period in comparison with the decline in value of the Company stock held by other Settlement Class members in their Plan accounts during the Class Period; and (2) the distribution takes place through the Plan so as to realize the tax advantages of the Plan.[4]  The proposed Plan of Allocation provides a simple, neutral, and fair structure for the allocation of the Net Proceeds among the Settlement Class members.  The Plan of Allocation is substantially the same plan of allocation approved and used in the vast majority of employer stock fund ERISA actions.  *See In re AOL Time Warner, Inc.,* No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006) (approving plan of allocation where it provided "recovery to damaged investors on a pro rata basis according to their recognized claims of damages."); *Global Crossing*, 225 F.R.D. at 463 (ERISA company stock case plan of allocation approved as fair and reasonable where it allocated "the settlement amount among plan participants based on their losses.").  *See also Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,* No. 3:08-CV-00271-JFA, 2012 WL 4061537, at *6 (D.S.C. Sept. 14, 2012) (approving plan of allocation in a non-ERISA case where the plan provided a pro rata distribution determined by the ratio of a member's state premium to the total amount of the state premium charged for all members).

The Plan of Allocation (Exhibit 3 to the Settlement Agreement) will be posted on the dedicated settlement website, and the Class Notice (Exhibit A to the Preliminary Approval Order)

---

[4] To ensure that former Plan participants receive settlement proceeds on a tax-free basis, Plan accounts may have to be created or reactivated.  A *de minimis* amount of $10.00 is proposed to limit the related administration costs borne by the Settlement Class.  *See* the Plan of Allocation.  A *de minimis* amount ensures that these administration costs are not excessive or economically irrational in relation to the benefits received by the Settlement Class members.

describing the Plan of Allocation will be mailed to the Settlement Class members. The Settlement Class will be given an opportunity to consider it.

### E.     IT IS APPROPRIATE TO SCHEDULE A FAIRNESS HEARING

Under Rule 23(e), a class action may not be settled, compromised, or dismissed without approval of the Court. To that end, Plaintiffs respectfully request that the Court hold a Fairness Hearing, after which the proposed Final Order (Exhibit 2 to the Settlement Agreement) would be entered, and the claims against the Defendants would be dismissed with prejudice. At the Fairness Hearing, the Court would have the opportunity to consider and rule upon the matters outlined in the Settlement Agreement, including, but not limited to: (i) whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court; (ii) whether the Plan of Allocation is fair and reasonable and should be approved by the Court; and (iii) whether the Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved by the Court.

### V.  CONCLUSION

For the reasons discussed herein, the Settlement is a fair, adequate, and reasonable resolution of the claims against the Defendants in this complex ERISA class action. Plaintiffs' Counsel respectfully request that the Court grant their motion and enter the Preliminary Approval Order, which: (a) preliminarily approves the Settlement; (b) conditionally certifies the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(l); (c) approves the forms for the mailing and publication of notice of Settlement; (d) preliminarily approves the proposed Plan of Allocation; and (e) sets a date and time for the Fairness Hearing and related deadlines as set forth in the proposed Preliminary Approval Order.

Respectfully submitted this 22nd day of May, 2018.

WYCHE, P.A.

*s/John C. Moylan, III*

John C. Moylan, III (D.S.C. Id. No. 5431)
Alice W. Parham Casey (D.S.C. Id. No. 9431)
801 Gervais Street, Suite B (29201)
P. O. Box 12247
Columbia, SC 29211-2247
Phone: 803-254-6542; Fax: 803-254-6544
jmoylan@wyche.com
tcasey@wyche.com

Henry L. Parr, Jr. (D.S.C. Id. No. 2984)
Eric B. Amstutz (D.S.C. Id. No. 0942)
Rita Bolt Barker (D.S.C. Id., 10566)
Wade S. Kolb, III (D.S.C. Id. No.11485)
44 East Camperdown Way
Greenville, S.C. 29601
Phone: 864-242-8200; Fax: 864-235-8900
hparr@wyche.com
eamstutz@wyche.com
rbarker@wyche.com
wkolb@wyche.com

KELLER ROHRBACK, LLP

Gary A. Gotto (Admitted *pro hac vice*)
Keller Rohrback LLP
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Phone: 602-248-0088; Fax: 602-248-2822
ggotto@kellerrohrback.com

Erin M. Riley (Admitted *pro hac vice*)
David J. Ko (Admitted *pro hac vice*)
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Phone: 206-623-1900; Fax: 206-623-3384
eriley@kellerrohrback.com
dko@kellerrohrback.com

*Attorneys for Plaintiffs*