UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DANA SPIRES, GLENN GRANT, SUSAN MOHLE, and TOM MIRANDA on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID R. SCHOOLS, WILLIAM A. EDENFIELD, JR., ROBERT G. MASCHE, JOSEPH T. NEWTON III, BURTON R. SCHOOLS, PIGGLY WIGGLY CAROLINA COMPANY, INC. & GREENBAX ENTERPRISES, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST PLAN COMMITTEE, JOANNE NEWTON AYERS, MARION NEWTON SCHOOLS, and JOHN DOES 1-10,<br><br>Defendants. | CASE NO: 2:16-cv-00616-RMG |

**JOINT DECLARATION OF PLAINTIFFS' COUNSEL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS; APPROVAL OF NOTICES OF SETTLEMENT; PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION; <u>AND SETTING OF FAIRNESS HEARING</u>**

**I.     INTRODUCTION**

Counsel for Plaintiffs, John C. Moylan and Erin M. Riley, declare under penalties of perjury pursuant to 28 U.S.C. § 1746 as follows:

(1)     We are members of the firms of Wyche, P.A., and Keller Rohrback, LLP, respectively, counsel for Plaintiffs and the class in this action ("<u>Plaintiffs' Counsel</u>"). The named plaintiffs in this matter are Dana Spires, Glenn Grant, Susan Mohle and Tom Miranda (collectively, "<u>Plaintiffs</u>" or "<u>Named Plaintiffs</u>").

1

(2)　We submit this Joint Declaration in support of the Plaintiffs' motion ("Plaintiffs' Motion") for an order (a) granting preliminary approval of the proposed Settlement; (b) conditionally certifying the proposed Settlement Class[1] pursuant to Fed. R. Civ. P. 23(b)(1) for settlement purposes only; (c) approving the forms for the mailing and publication of notice of Settlement; (d) granting preliminary approval of the proposed Plan of Allocation; and (e) setting a date and time for the Fairness Hearing with respect to the proposed Settlement and related deadlines as set forth in the proposed Preliminary Approval Order (Exhibit 1 to the Settlement Agreement) ("Proposed Approval Order").  At the Fairness Hearing, *inter alia*, the Court will consider final approval of the Settlement, the Plan of Allocation, and the request for attorneys' fees and expenses by Plaintiffs' Counsel.

(3) Under the Class Action Settlement Agreement, dated May 22, 2018 (the "Settlement Agreement"), a Settlement Fund consisting initially of an Original Cash Amount of $5.2 million will be established.  Shortly after final approval, the Original Cash Amount will be deposited into an account bearing interest for the benefit of Settlement Class members.  The Settlement, if approved, will represent an excellent result providing substantial benefits to the Settlement Class, while removing the risks and delays associated with further litigation.  As discussed below, the Settlement was reached after hard-fought litigation.  The claims were tested through motions to dismiss.  There was extensive discovery with Plaintiffs' Counsel reviewing and analyzing documents culled from approximately two and a half million pages of documents produced by Parties and non-parties.  Plaintiffs' Counsel conducted or participated in depositions of fifteen witnesses.  The Parties engaged in substantial arm's-length negotiations, including a full

---

[1] Except as indicated, the capitalized terms used herein shall have the meanings ascribed to them in the Settlement Agreement (defined below), filed with the Court in connection herewith.

day of in-person mediation with mediator Thomas J. Wills, Esq., along with numerous follow-up communications.

(4) The proposed cash settlement consists of the Original Cash Amount of $5.2 million plus Additional Cash Amounts to be paid in the future estimated by the Defendants to range between $2.475 million and $3.45 million. The Settlement represents a substantial monetary benefit for the Settlement Class. The Settlement was reached at a time when the Parties understood the strengths and weaknesses of their respective positions, after motions to dismiss were filed and ruled on and the completion of fact discovery. Plaintiffs' Counsel believe that the proposed Settlement is in the best interests of the Settlement Class, providing an immediate monetary benefit to the Settlement Class members, while avoiding the risks of protracted and contested litigation. Continued litigation would likely involve disputes concerning class certification, additional dispositive motion practice at the summary judgment phase, trial and likely appeals, which could result in a lesser recovery from Defendants or no recovery at all.

## II.  BACKGROUND

### A.  The Settlement Was Achieved After Substantial Litigation

The Named Plaintiffs are participants in the Piggly Wiggly Carolina Company, Inc. & Greenbax Enterprises, Inc. Employee Stock Ownership Plan and Trust (the "Plan"). Two of the Named Plaintiffs initiated this Action individually and on behalf of all persons similarly situated by filing a complaint on February 26, 2016 in the United States District Court for the District of South Carolina (the "Court"). The complaint alleged that Defendants David R. Schools, William A. Edenfield, Jr., Robert G. Masche, Joseph T. Newton III and Burton R. Schools (the "Piggly Wiggly Defendants") functioned as fiduciaries of the Plan during the Class Period. The complaint alleged that the Piggly Wiggly Defendants breached their fiduciary obligations under the Employee Retirement Income Security Act, as amended ("ERISA"), and committed other

violations of ERISA. The complaint further alleged that Defendants Joanne Newton Ayers and Marion Newton Schools (the "Noteholder Defendants") participated in the repayment of certain notes payable in violation of ERISA.

The Piggly Wiggly Defendants and the Noteholder Defendants filed Motions to Dismiss on May 6, 2016. On May 23, 2016, all four Named Plaintiffs filed the First Amended Complaint (the "Complaint").

Count One of the Complaint asserts claims pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a), against the Piggly Wiggly Defendants for various breaches of fiduciary duty in their roles as members of the Plan Committee, members of the Company's Board of Directors, and Plan Trustees, including the claim that the Piggly Wiggly Defendants should have changed the Board and management of the Company during the early part of the Class Period and that the Piggly Wiggly Defendants engaged in improper self-dealing transactions. Count Two asserts claims pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a) against the Piggly Wiggly Defendants for various breaches of fiduciary duty in connection with not bringing derivative actions against the management and Board of the Company. Count Three asserts claims pursuant to ERISA §§ 405 and 409, 29 U.S.C. §§ 1105 and 1109, against the Piggly Wiggly Defendants based upon their liability as alleged co-fiduciaries for those acts and omissions complained of in the other counts. Count Four asserts claims pursuant to ERISA §§ 406(a)-(b) and 409, 29 U.S.C. §§ 1106(a)-(b) and 1109, against the Piggly Wiggly Defendants for engaging, directly or indirectly, in certain transactions prohibited under ERISA. Last, Count Five asserts claims against all the Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for injunctive and equitable relief for various alleged acts and omissions in violation of ERISA as set forth in the other Counts.

On June 20, 2016, the Piggly Wiggly Defendants and the Noteholder Defendants filed motions to dismiss the Complaint. On September 19, 2017, the Court granted in part and denied in part these Motions to Dismiss and issued a detailed Order. On October 3, 2017, the Piggly Wiggly Defendants and the Noteholder Defendants filed Answers to the Complaint. On November 3, 2017, the Court entered its Amended Scheduling Order.

Thereafter, the parties engaged in comprehensive discovery, including negotiating discovery protocols, exchanging discovery related correspondence, serving and responding to document production requests and interrogatories, reviewing produced documents, serving *subpoenas duces tecum* on numerous third parties and reviewing the documents produced in response to them, taking depositions of fifteen individuals (parties and non-parties), and submitting expert reports. In conjunction with this discovery, Plaintiffs' Counsel established an electronic document depository and implemented a system of coding and categorizing documents relevant to the claims in the Complaint. This assisted Plaintiffs' Counsel in reviewing the voluminous document production made by the Defendants and third parties.

### B. Settlement Negotiations Lead To A Settlement Agreement

(1) After filing, briefing, and disposition of Defendants' motions to dismiss, extensive discovery and analysis of Plaintiffs' claims, and familiarity with Defendants' legal and factual arguments against the claims, the Parties participated in an all-day in-person mediation with Thomas J. Wills, Esq. on March 28, 2018. The Parties did not reach agreement at that time, but continued negotiations with the assistance of the mediator thereafter and reached agreement on an outline of the basic terms of settlement on April 13, 2018. The Settlement was achieved as a result of substantial arm's-length negotiations mediated by Mr. Wills.

(2) The Settlement negotiated by the Parties requires the establishment of a common fund for the Class, from which fund all of Plaintiffs' Counsel's attorneys' fees and expenses would be paid. Under the Settlement, the Defendants agreed that they would not contest the amount sought by Plaintiffs' Counsel for attorneys' fees so long as that amount did not exceed one-third of the total common fund. Plaintiffs' Counsel's application for attorneys' fees will be for one-third of the aggregate common fund. Depending on the aggregate amount of the Settlement Fund, this amount of attorneys' fees may represent a discount to Plaintiffs' Counsel's lodestar amount (hourly rate multiplied by the number of hours worked) expended in prosecuting and resolving this Action (lodestar being the touchstone method used under the ERISA fee-shifting statute).

(3) At the time the Settlement Agreement was executed, Plaintiffs' Counsel had a thorough understanding of the strengths and weaknesses of Plaintiffs' claims and Defendants' asserted and potential defenses. In light of (i) the Settlement's substantial benefits (including the payment of substantial amounts for the benefit of the Settlement Class); (ii) the costs and risks of continuing the litigation against the Defendants through trial and appeals; (iii) the fact that the proposed Settlement resulted from arm's-length negotiations assisted by an experienced and respected mediator; and (iv) the approval of the Settlement by the Named Plaintiffs who initiated the prosecution of this Action, it is respectfully submitted that the Settlement warrants the Court's preliminary approval and scheduling of notice to the Settlement Class of the Fairness Hearing.

(4) On May 22, 2018, the Parties executed the Class Action Settlement Agreement (defined above as the "<u>Settlement Agreement</u>"), filed with the Court in connection herewith.

### C. Summary Of Terms Of The Settlement

The principal terms of the Settlement are:

(5) **Settling Defendants**. All individual Defendants[2] named in this action ("Action") are parties to the Settlement.

(6) **The Plan Affected**. The Plan covered by the Settlement is the Piggly Wiggly Carolina Company, Inc. & Greenbax Enterprises, Inc. Employee Stock Ownership Plan and Trust (the "Plan").

(7) **Settlement Class**. The Settlement Agreement contemplates that the Court will certify the following settlement class (the "Settlement Class" or "Class") under Fed. R. Civ. P. 23(a) & (b):

> All persons who were vested or non-vested participants in or beneficiaries of the Plan at any time from February 26, 2008 through the present (or their Successors-In-Interest). The "Settlement Class" shall not include any of the Individual Defendants (defined to include all Defendants who are individuals) or their respective Successors-In-Interest.

Settlement Agreement § 1.1.39.

(8) **Settlement Fund**. The Plaintiffs agreed to settle all claims against the Defendants for the Original Cash Amount of $5.2 million, plus Additional Cash Amounts to be paid in the future, all to be deposited in a Settlement Fund, which, less approved attorneys' fees and expenses, shall be for the benefit of the Plans' participants and beneficiaries. Settlement Agreement § VII.7.1.2 & 7.1.3.

(9) **Released Claims**. In exchange for the Settlement Fund, Plaintiffs have agreed to release Plaintiffs' and the Settlement Class's claims against the Defendants. The details of the release are set forth in § III.3.1 of the Settlement Agreement

---

[2] The following individuals were named as Defendants in the First Amended Complaint, filed May 23, 2016: David R. Schools, William A. Edenfield, Jr., Robert G. Masche, Joseph T. Newton III, Burton R. Schools, Joanne Newton Ayers, and Marion Newton Schools (collectively, the "Individual Defendants").

(10) **Plan of Allocation**. The Net Proceeds will be allocated to accounts of Settlement Class members pursuant to a detailed Plan of Allocation, submitted for preliminary approval herewith as Exhibit 3 to the Settlement Agreement. In general terms, the Net Proceeds will be allocated to Settlement Class members on a *pro rata* basis, in proportion to the decline in value of the Company stock allocated to their Plan accounts. In this way, the Plan of Allocation will distribute the Net Proceeds equitably based upon each Settlement Class member's estimated alleged loss.

(11) **Notice**. As noted above, the Proposed Approval Order is filed together with this Declaration. The Proposed Approval Order provides for the following notices:

    (i) A Class Notice (Exhibit A), to be mailed to the last known addresses of all Class members, and to be published on a website established by Plaintiffs' Counsel; and

    (ii) A Legal Notice (Exhibit B), to be published in *The Charleston Post & Courier* and *The State.*

(12) **Attorneys' Fees and Expenses**. Plaintiffs' Counsel may apply to the Court for an award to Plaintiffs' Counsel of attorneys' fees in an amount not to exceed one-third of the Settlement Fund[3], and for reimbursement of out-of-pocket litigation expenses associated with this Action, to be paid from the Settlement Fund. Settlement Agreement § X.10.1.

---

[3] As noted herein, Plaintiffs' Counsel's attorneys' fees application for one-third of the Settlement Fund may represent a substantial discount to their lodestar depending on the aggregate amount of the Settlement Fund. Courts sometimes confirm the reasonableness of a proposed percentage-based award by comparing it to (or "cross-checking" it against) the award that would result if the Court used the lodestar approach (which calculates fees using the reasonable value of the time spent on the case).

**D.    Proposed Schedule**

(1)    The Parties have consented to the following schedule leading to the Fairness Hearing:

| Event | Time for Compliance |
|---|---|
| Defendants shall prepare and provide the notices required by CAFA, as specified by 28 U.S.C. § 1715. | Within ten (10) days after filing of Plaintiffs' Motion and at least ninety (90) days prior to the proposed Fairness Hearing. |
| Defendants shall provide, or cause to be provided, names and last known addresses of the Class members, to the extent reasonably available, in electronic format. | At least twenty-one (21) days prior to the deadline for mailing notice. |
| Deadline for Mailing of Class Notice to members of the Settlement Class. | Sixty (60) days prior to the proposed Fairness Hearing. |
| Deadline for publication of Legal Notice in *The Charleston Post & Courier* and *The State*. | Sixty (60) days prior to the Fairness Hearing. |
| Deadline for Plaintiffs to file with the Court their motion for final approval of Settlement and award of attorneys' fees and expenses. | Thirty-one (31) days prior to the Fairness Hearing. |
| Deadline for Class members to comment upon or object to the proposed Settlement. | Twenty-one (21) days prior to the Fairness Hearing, |
| Deadline for Class members to request appearance at Fairness Hearing. | Twenty-one (21) days prior to the Fairness Hearing. |
| Deadline for Plaintiffs to file Response To Any Objections to Final Approval of the proposed Settlement, including approval of the Plan of Allocation and the request for attorneys' fees and expenses. | Fourteen (14) days prior to the Fairness Hearing. |
| Fairness Hearing | _____, 2018 |

9

### III. PRELIMINARY APPROVAL OF SETTLEMENT

(1) Plaintiffs present this Settlement for preliminary review under Fed. R. Civ. P. 23(e), which requires court approval of class action settlement, the issuance of notice in a reasonable manner to class members who would be bound by the settlement, and a finding by the court following a hearing that the settlement is fair, reasonable, and adequate. Id. For the reasons discussed below, preliminary approval under this rule is appropriate at this time.

#### A. Factors Favoring Preliminary Approval

(2) The settlement of complex class action litigation is favored by the courts. See generally Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Settlement, Conditional Certification of Settlement Class, Approval of Notices of Settlement, Preliminary Approval of the Plan of Allocation, and Setting of Fairness Hearing, filed herewith ("<u>Plaintiffs' Memorandum</u>").

(3) As set forth in Plaintiffs' Memorandum, a presumption of fairness and adequacy attaches to the proposed settlement if the settlement is reached by experienced counsel in arm's-length negotiations after meaningful discovery. This initial presumption of fairness and adequacy applies with special force here, where the Settlement is the product of substantial arm's length negotiations, with the assistance of a highly-experienced and widely-respected mediator. The Settlement was reached by the Parties and their counsel after the intense prosecution of this Action. The Settlement was not achieved until the Parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement amount that is reasonable, fair, and adequate to the Settlement Class.

(4) The terms of the proposed Settlement here are clearly within the range of "possible approval." See *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). As detailed in Plaintiffs' Memorandum, although Named Plaintiffs and

Plaintiffs' Counsel believe that the claims asserted in the Action against the Defendants are meritorious, continued litigation posed the real risk that following a trial, a lesser recovery (or no recovery at all) would result. Defendants would likely continue to argue, *inter alia*, that no fiduciary or legal duties were breached and that in any event the losses suffered by Plaintiffs and the members of the Class were not the result of any fiduciary lapses. Each of these issues involves complex legal and factual questions, and there remains a significant risk that a fact-finder might agree with the Defendants on one or more of these issues.

(5)     In addition, there is significant uncertainty concerning the collectability of any significant judgment against the Defendants, if such a judgment were obtained. The Plaintiffs lack full and complete information concerning the specific amount or nature of the Defendants' assets. While the Piggly Wiggly Defendants have fiduciary liability insurance coverage with respect to the fiduciary breach claims in the Complaint, the amount of this coverage has been significantly reduced by the attorneys' fees and litigation expenses incurred by the Piggly Wiggly Defendants, and continued litigation could further reduce or even eliminate this coverage. In other words, a failure to settle would create a significant risk that insufficient or no insurance coverage would be available to pay for any judgment that the Plaintiffs might obtain against the Piggly Wiggly Defendants. In the Plaintiffs' view, the wasting nature of the Piggly Wiggly Defendants' insurance coverage was an important factor favoring the Settlement.

(6)     The payment of $5.2 million of Original Cash Amount, plus Additional Cash Amounts to be paid in the future, when viewed in the context of these risks and uncertainties and the likelihood that taking the case to trial would require years of additional litigation and expenses for the Settlement Class, makes the Settlement a strong result for the Settlement Class.

(7) Eventually, in connection with the Fairness Hearing, Plaintiffs will be required to demonstrate satisfaction of the bifurcated, multi-factor test set out by *In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991) to obtain approval of the proposed Settlement. Plaintiffs' Counsel anticipate they will be able to demonstrate that the following factors favor approval of the Proposed Settlement:

(1) Fairness

    a. the posture of the case at the time settlement was proposed;

    b. the extent of discovery that has been conducted;

    c. the circumstances surrounding the negotiations; and

    d. the experience of counsel in the area of class action litigation.

(2) Adequacy

    a. the relative strength of the plaintiffs' case on the merits;

    b. the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;

    c. the anticipated duration and expense of additional litigation;

    d. the solvency of the defendants and the likelihood of recovery on a litigated judgment; and

    e. the degree of opposition to the settlement.

*Id.* See also Plaintiffs' Memorandum.

### B. Conditional Class Certification

(1) Pursuant to ¶ I.1.39 of the Settlement Agreement, the Parties have stipulated to a Settlement Class for the purposes of the Settlement. Plaintiffs seek certification of a non-opt-out class pursuant to Rule 23 (b)(1), which provides a class may be certified if:

>   (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>   (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or
>
>   (B) adjudications with respect to individual class members that, as a practical matter would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).

(2) A detailed representation of the legal issues attendant to certification of a class for settlement purposes are set forth in Plaintiffs' Memorandum and will not be repeated here. Rule 23(a) provides that a class should be certified if:

>   (a) the class members are so numerous that joinder of all members is impracticable;
>
>   (b) the action addresses questions of law or fact common to the class;
>
>   (c) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and
>
>   (d) the class representative parties will fairly and adequately protect the interests of the class.

(3) Here, based on public filings, Plaintiffs have alleged that they believe that there are approximately 5,000 participants in and beneficiaries of the Plans. See First Amended Complaint, ¶33. Consequently, numerosity exists in this case.

(4) Commonality exists, because in this case there are several common questions with respect to each member of the proposed class, including:

- whether the Piggly Wiggly Defendants were fiduciaries of the Plan;

- whether the Defendants breached their fiduciary duties or otherwise violated ERISA;
- whether the Plan and thereby the participants in and beneficiaries of the Plan were injured by such breaches or violations; and
- whether the Settlement Class is entitled to damages and, if so, the proper measure of damages.

(5)     The typicality requirement does not require that all of the putative Settlement Class members' claims be identical. The typicality requirement is often met in proposed class actions brought for breaches of fiduciary duty under ERISA.

(6)     The Named Plaintiffs' claims are typical of those of the proposed Settlement Class. Each Named Plaintiff was a participant in the Plan during the Class Period, and Company stock was allocated to each Named Plaintiff's Plan account. All members of the Settlement Class, including the Named Plaintiffs, sustained the same type of alleged injury described in the Complaint due to the Defendants' alleged breaches of their fiduciary duties and other violations of ERISA. Further, the Named Plaintiffs are entitled under ERISA to bring a claim for plan-wide relief. See 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty goes to the plan). Because the Named Plaintiffs and the absent Class members seek the same relief for the same alleged wrongs by the same Defendants, the Named Plaintiffs' claims are typical of the claims of the Settlement Class within the meaning of Rule 23(a)(3).

(7)     Moreover, with regard to the claims in the Action, the Named Plaintiffs have no interests antagonistic to those of the absent Settlement Class members. Therefore, they are adequate representatives.

(8)     The Named Plaintiffs have also retained attorneys that are highly qualified, experienced, and able to conduct this litigation. The law firms of Wyche and Keller Rohrback, collectively, have extensive experience litigating complex ERISA breach of fiduciary duty and

other class actions. They each have served as lead or co-lead counsel in other class action cases, many of which have been successfully resolved for the benefit of those bringing the claims.

(9)     Keller Rohrback has extensive experience litigating ERISA fiduciary class actions such as this one, as well as extensive experience litigating class actions in general. Keller Rohrback's ERISA attorneys work hard to protect the interests of participants and beneficiaries. In addition to litigating ERISA cases, lawyers at Keller Rohrback have testified before Congress, served as editors of employee benefits books, frequently make presentations at national legal education seminars regarding ERISA, serve as fiduciaries and mediators, and also write scholarly ERISA articles, amicus briefs, and comments to regulatory agencies overseeing ERISA plans. Keller Rohrback's ERISA attorneys are part of the firm's Complex Litigation Group, a go-to plaintiff's firm for large-scale, complex cases.

(10)    Wyche attorneys have a long history of involvement with class action litigation, primarily outside of the ERISA context, as both defense and plaintiffs' counsel. Wyche's class action experience has included securities cases, a pension plan case under ERISA, an insurance coverage case, a case on behalf of home owners against a cable company, and a case brought by foster children against the State of South Carolina,

(11)    In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). Here, as stated above, the Named Plaintiffs seek certification of a Settlement Class pursuant to Rule 23(b)(1), quoted above.

(12)    Given the unique "group-based" relief ERISA offers for violations of fiduciary duties owed to participants in covered benefit plans and other violations of ERISA, this action is a textbook case for class treatment under Rule 23(b)(1).

(13)     The recitation above of Plaintiffs' Counsel's extensive efforts in this Action, plus Plaintiffs' Counsel's considerable experience, collectively, in handling class actions, other complex litigation, and claims of the type asserted in this action, demonstrate that Plaintiffs' Counsel are qualified under Rule 23(g).

### IV.     THE PROPOSED FORMS OF NOTICE SATISFY RULE 23 AND DUE PROCESS

(1)     Notice to absent class members is a requirement for approval of class action settlements in order to safeguard the due process rights of both absent class members and defendants.

(2)     The Plaintiffs' and Defendants' "Notice Plan" consists of: (1) the Class Notice to be mailed to the last known address of each Settlement Class member (Exhibit A to the Proposed Approval Order); (2) the Legal Notice to be published in *The Charleston Post & Courier* and *The State* (Exhibit B to the Proposed Approval Order); and (3) the creation of a dedicated website administered by Plaintiffs' Counsel to provide current information to Settlement Class members. The Notice Plan is intended to fully inform the Settlement Class members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights. Because the Settlement Class does not allow for opting out, all Settlement Class members will be eligible to receive a distribution from the Settlement regardless of their actual receipt of such Notice.

### V.     THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

(1)     Here, the Plan of Allocation was designed by experienced Plaintiffs' Counsel who have prepared similar plans for other cases. The Plan of Allocation provides a recovery to the Class, net of administrative expenses, attorneys' fees and other expenses, on a *pro rata* basis according to the decline in value of the Settlement Class members' respective shares of Company

16

stock held by the Plan. No Settlement Class member or group of Settlement Class members is singled out for either disproportionately favorable or unfavorable treatment; all participate in the recovery pursuant to the Plan of Allocation in the same manner.

(2) The two basic features of the proposed Plan of Allocation are that (1) each Settlement Class member receives a share of the Net Proceeds based approximately on the decline in value of the Company stock held in his or her Plan account over the Class Period in comparison with the decline in value of the Company stock held by other Settlement Class members in their Plan accounts during the Class Period; and (2) the distribution takes place through the Plans so as to realize the tax advantages of the Plan.[4] The proposed Plan of Allocation provides a simple, neutral and fair structure for the allocation of the Net Proceeds among the Settlement Class members.

(3) The Plan of Allocation is substantially the same plan of allocation approved and used in the vast majority of employer stock fund ERISA actions. See, e.g., *In re AOL Time Warner, Inc.,* No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006) (approving plan of allocation where it provided "recovery to damaged investors on a pro rata basis according to their recognized claims of damages."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (ERISA company stock case plan of allocation approved as fair and reasonable where it allocated "the settlement amount among plan participants based on their losses."). See also *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,* No. 3:08-CV-00271-JFA, 2012 WL 4061537, at *6 (D.S.C. Sept. 14, 2012) (approving plan of allocation in a non-ERISA case where

---

[4] To ensure that former Plan participants receive settlement proceeds on a tax-free basis, Plan accounts may have to be created or reactivated. A *de minimis* amount of $10.00 is proposed to limit the administration costs borne by the Settlement Class. A *de minimis* amount ensures that these administration costs are not excessive or economically irrational in relation to the benefits received by the Settlement Class members.

the plan provided a pro rata distribution determined by the ratio of a member's state premium to the total amount of the state premium charged for all members.).

(4)     The Plan of Allocation will be posted on the dedicated Settlement website, and the Class Notice describing the Plan of Allocation will be both posted to the Settlement website and mailed to the Class. The Settlement Class will be given an opportunity to consider it.

## VI.     IT IS APPROPRIATE TO SCHEDULE A FAIRNESS HEARING

(1)     Under Rule 23(e), a class action may not be settled, compromised, or dismissed without approval of the Court. To that end, Plaintiffs respectfully request that the Court hold a Fairness Hearing, after which the proposed Final Order (Exhibit 2 to the Settlement Agreement) would be entered, and the claims against the Defendants would be dismissed with prejudice. At the Fairness Hearing, the Court would have the opportunity to consider and rule upon the matters outlined in the Settlement Agreement, including, but not limited to: (i) whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court; (ii) whether the Plan of Allocation is fair and reasonable and should be approved by the Court; and (iii) whether the Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved by the Court.

## VII.    PLAINTIFFS' COUNSEL ARE ENTITLED TO ATTORNEYS' FEES PAID FROM THE SETTLEMENT FUND THAT CREATED A BENEFIT FOR THE CLASS

(1)     It is well-settled that attorneys who represent a class and aid in creating a common fund are entitled to compensation from that fund for their services. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts deciding whether counsel fees awarded in ERISA class settlements should be paid from the common fund created or should be paid by defendants under the fee-shifting provisions of 29 U.S.C. § 1132(g) ("§ 1132(g)") have looked to the common fund

18

to satisfy the award, notwithstanding § 1132(g)'s fee-shifting provisions. *See* Jeffrey Lewis, et al., *Employee Benefits Law*, Ch.12.III.J.I (3rd ed. 2012).

(2) The common fund doctrine is well-recognized in the Fourth Circuit, including in ERISA fiduciary duty breach cases. *See Savani v. URS Prof'l Sols. LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *2 (D.S.C. Jan. 15, 2014). Indeed, numerous courts in the District of South Carolina have awarded attorneys' fees from the settlement funds created in analogous ERISA class actions.[5]  In some of those cases, the courts "cross check" the result of the common fund award against the 'lodestar' approach. As the court stated in *DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *7 (D.S.C. Dec. 6, 2013):

> Many courts that have used the [common fund] method also use a modified form of the lodestar method to perform a "cross-check" to ensure that the percentage award [from the common fund] is fair and reasonable. The Fourth Circuit has not issued any definitive guidance about which methodology is preferred for awarding or approving attorney's fees in class action cases. *Kay Co.,* 749 F.Supp.2d at 463. District Courts have considerable discretion in evaluating the reasonableness of an attorney's fee award. *Id.* Numerous district courts within the Fourth Circuit have used the [common fund] method, and many have also employed the lodestar cross-check, in setting attorney's fees in class action settlements.

(3) With those decisions in mind, Plaintiffs considered fee-shifting pursuant to § 1132(g) to be inappropriate as the fee award funding mechanism and as the sole method to determine the amount of Plaintiffs' Counsel's fee award. Instead, consistent with the cited precedents, Plaintiffs believe the common fund practice to be the appropriate and fair method for Plaintiffs' Counsel to apply for a fee award in this Action. Moreover, when Defendants negotiated the Settlement, they made it clear to the mediator and to Plaintiffs' Counsel that any settlement

---

[5] See *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007); *DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *7 (D.S.C. Dec. 6, 2013); *George v. Duke Energy Ret. Cash Balance Plan*, No. 8:06-CV-00373-JMC, 2011 WL 13218031, at *2 (D.S.C. May 16, 2011); *Anselmo v. W. Paces Hotel Grp., LLC*, No. 9:09-CV-02466-DCN, 2012 WL 5868887, at *4 (D.S.C. Nov. 19, 2012); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101, 133 S. Ct. 1537, 1548, 185 L. Ed. 2d 654 (2013).

would need to involve a common fund for the Class out of which any award of Plaintiffs' attorneys' fees and expenses would need to be paid.

## VIII.  CONCLUSION

For the reasons discussed above, the Settlement is a fair, adequate, and reasonable resolution of the claims against the Defendants in this complex ERISA class action.  Plaintiffs' Counsel respectfully request that the Court grant their motion and enter the Proposed Approval Order, which:  (a) preliminarily approves the Settlement; (b) conditionally certifies the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(l); (c) approves the forms for the mailing and publication of notice of Settlement; (d) preliminarily approves the proposed Plan of Allocation; and (e) sets a date and time for the Fairness Hearing and related deadlines as set forth in the Proposed Approval Order.

Respectfully submitted this 22nd day of May, 2018.

*s/John C. Moylan, III*
John C. Moylan, III
WYCHE, P.A.
801 Gervais Street, Suite B
Columbia, SC 29201
Telephone:  (803) 245-6542
Facsimile:  (803) 254-6544

Attorneys for Plaintiffs

*s/Erin M. Riley*
Erin M. Riley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Attorneys for Plaintiffs