UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

DANA SPIRES, GLENN GRANT, SUSAN
MOHLE, and TOM MIRANDA on Behalf of
Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

CASE NO: 2:16-cv-00616-RMG

DAVID R. SCHOOLS, WILLIAM A.
EDENFIELD, JR., ROBERT G. MASCHE,
JOSEPH T. NEWTON III, BURTON R.
SCHOOLS, PIGGLY WIGGLY CAROLINA
COMPANY, INC. & GREENBAX
ENTERPRISES, INC. EMPLOYEE STOCK
OWNERSHIP PLAN AND TRUST PLAN
COMMITTEE, JOANNE NEWTON AYERS,
MARION NEWTON SCHOOLS, and JOHN
DOES 1-10,

Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN AWARD
OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

WYCHE, P.A.

John C. Moylan, III (D.S.C. Id. No. 5431)
Alice W. Parham Casey (D.S.C. Id. No. 9431)
801 Gervais Street, Suite B (29201)
PO Box 12247
Columbia, SC 29211-2247
Telephone:  (803) 245-6542
Facsimile:  (803) 254-6544

Henry L. Parr, Jr. (D.S.C. Id. No. 2984)
Eric B. Amstutz (D.S.C. Id. No. 0942)
Wade S. Kolb, III (D.S.C. Id. No. 11485)
44 East Camperdown Way (29601)
PO Box 728
Greenville, S.C. 29602-0728
Telephone: (864) 242-8200
Telecopier: 864-235-8900

Attorneys for Plaintiffs

KELLER ROHRBACK LLP

Gary A. Gotto (Admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: 602-248-0088
Telecopier: 602-248-2822

Erin M. Riley (Admitted *pro hac vice*)
David J. Ko ( Admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Telecopier: (206) 623-3384

Attorneys for Plaintiffs

## I.    INTRODUCTION[1]

Named Plaintiffs Dana Spires, Glenn Grant, Susan Mohle and Tom Miranda ("Plaintiffs") submit this memorandum in support of their Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

Following two years of litigation in this ERISA action (the "Action") – including the briefing and Court resolution of motions to dismiss, the completion of fact discovery, the submission of expert reports, and settlement negotiations – the Parties reached a settlement of the Action, resolving all of Plaintiffs' claims on behalf of the Piggly Wiggly Carolina Company, Inc. & Greenbax Enterprises, Inc. Employee Stock Ownership Plan (such plan and any trust created thereunder, the "Plan") against the Defendants.

The Settlement provides for an Original Cash Amount of $5.2 million in cash, to be augmented by Additional Cash Amounts estimated by the Defendants to range from $2.475 million to $3.45 million in the aggregate, plus interest (less Court-approved fees and expenses), for the benefit of the Plan's participants and beneficiaries who are members of the Settlement Class as defined in the Settlement Agreement (the "Settlement Class" or "Class"). Plaintiffs and Plaintiffs' Counsel respectfully submit that this result was obtained through the hard work, persistence, and skill of Plaintiffs' Counsel, who have prosecuted this Action since 2016 on an entirely contingent basis, and warrants the requested fee and expense awards.

As set forth more fully in the Joint Declaration,[2] the efforts of Plaintiffs' Counsel have been substantial.  Over the course of this Action, Plaintiffs' Counsel expended great efforts

---

[1]    All capitalized terms not otherwise defined herein have the meaning given them in the Class Action Settlement Agreement ("Settlement Agreement"), filed in this Action, Docket No. 136.

[2]    *See* Joint Declaration of Plaintiffs' Counsel In Support Of Plaintiffs' Motions (1) For Approval Of Settlement And Plan Of Allocation; And Certification Of Settlement Class; and (2) An Award Of Attorneys' Fees and Reimbursement Of Expenses ("Joint Declaration" or "Joint Decl."), filed herewith.

prosecuting this Action and, despite many significant obstacles, and very substantial risks, succeeded in achieving an excellent recovery.   Among other activities, Plaintiffs' Counsel investigated, drafted, and filed the initial complaint and the First Amended Complaint (the "Complaint"), the latter totaling 288 numbered paragraphs and 80 pages; filed responses to Defendants' motions to dismiss; conducted and participated in numerous conferences with defense counsel concerning the merits of the case as well as discovery; negotiated and coordinated the scope and logistics of discovery, including establishing search terms, custodians, and time periods for Defendants' document production; served subpoenas *duces tecum* on twenty-eight third parties; reviewed documents culled from approximately 2.5 million pages of documents produced in this Action by parties and non-parties; participated in depositions of fifteen individual (parties and non-parties); and identified and coordinated the reports of two experts.   In conjunction with discovery, Plaintiffs' Counsel established an electronic document depository and implemented a system of coding and categorizing documents relevant to the claims in the Complaint.   This assisted Plaintiffs' Counsel in reviewing the voluminous document production made by the Defendants and third parties.   By the time the Settlement was reached, fact discovery had been completed. Joint Decl. at 3.

On March 28, 2018, the parties participated in an in-person mediation with mediator Thomas J. Wills, Esq.  Negotiations continued thereafter with the assistance of the mediator.  On April 13, 2018, the proposed Settlement was agreed upon.

The Settlement represents an excellent result for the Settlement Class, particularly when viewed against the numerous and significant risks Plaintiffs and Plaintiffs' Counsel faced going forward in this litigation.  As set forth in greater detail in the Joint Declaration and in Plaintiffs' memorandum in support of final approval of the Settlement, Defendants raised, and likely would have raised, a series of defenses that, if successful, might have adversely affected Plaintiffs'

Counsel's ability to defeat motions for summary judgment and/or obtain a meaningful (if any) recovery on behalf of the Class.

As compensation for their efforts to achieve, for the benefit of the Settlement Class, the Settlement now before the Court, Plaintiffs' Counsel are applying for a fee of one-third of the Original Cash Amount and Additional Cash Amounts deposited in the Settlement Fund, plus reimbursement of their out-of-pocket litigation expenses totaling $302,583.74. *See* Exhibits G (Costs of Wyche, PA) & H (Costs of Keller Rohrback, LLP) attached to Joint Declaration

Plaintiffs' Counsel's total lodestar through July 29, 2018 is $3,181,169.90. *See* Exhibits C & D attached to Joint Declaration. If the aggregate amount deposited in the Settlement Fund is $7.675 million ($5.2 million Original Cash Amount, plus Defendants' low-end estimate of $2.475 million Additional Cash Amounts) the requested fee would be $2,558,000. If the aggregate amount deposited in the Settlement Fund is $8.65 million ($5.2 million Original Cash Amount, plus Defendants' high-end estimate of $3.45 million Additional Cash Amounts) the requested fee would be $2,883,000.

In view of the substantial risks, the complexity of the case, the difficulties overcome in achieving the Settlement, the quality of the legal work performed, and the amount of time and effort expended by Plaintiffs' Counsel, the fee request is fair and reasonable under the applicable standards in this Circuit, and is well within the range of awards granted in contingent fee matters in comparable ERISA class actions.

In accordance with the Court's Preliminary Approval Order,[3] a printed notice of the proposed Settlement, in substantially the form approved by the Court, was mailed to 6,596

---

[3]     On May 23, 2018, the Court preliminarily approved the Settlement, set a hearing for August 31, 2018 ("Fairness Hearing") to, *inter alia*, determine the fairness, reasonableness, and adequacy of the Settlement and the Plan of Allocation, and consider Plaintiffs' request for an award of attorneys' fees and reimbursement of expenses, and directed that notice of the Settlement be given to the Settlement Class.

potential Settlement Class members on July 2, 2018. *See* Affidavit of Kimberly K. Ness with Respect to Dissemination of Notice of Class Action Settlement ("Ness Affidavit"), annexed to the Joint Declaration as Exhibit A. A summary notice of the Settlement was published in *The Charleston Post & Courier* and *The State* on June 17, 2018. *See* Exhibit B to the Joint Declaration. Both the mailed and the summary notices (collectively, the "Notice") advised the Settlement Class of, *inter alia*, the request for an award of attorneys' fees and reimbursement of litigation expenses. *See* Exhibits A and B to the Joint Declaration. The Notice also advised the Settlement Class members of their right to object to the fee and expense award request. *See id*. As of Friday, July 27, 2018, only 4 written objections have been received, and none of these objects to the fee and expense request. Instead, the objections are to the overall monetary amount of the Settlement.[4]

## II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE GRANTED

### A.    The Legal Standard Governing Awards of Attorneys' Fees

(1)    It is well-settled that attorneys who represent a class and aid in creating a common fund are entitled to compensation from that fund for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts deciding whether counsel fees awarded in ERISA class settlements should be paid from the common fund created or separately by defendants under the fee-shifting provisions of 29 U.S.C. § 1132(g) ("§ 1132(g)") have looked to the common fund to satisfy the award, notwithstanding § 1132(g)'s fee-shifting provisions. *See* Jeffrey Lewis, et al., *Employee Benefits Law*, Ch.12.III.J.I (3rd ed. 2012).

(2)    The common fund doctrine is well-recognized in the Fourth Circuit, including in ERISA fiduciary duty breach cases. *See Savani v. URS Prof'l Sols. LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *2 (D.S.C. Jan. 15, 2014). Indeed, numerous courts in the District of

---

[4]    The deadline for objections is August 10, 2018. Should any Settlement Class member object to the Settlement, Plaintiffs will respond in accordance with the schedule provided in the Preliminary Approval Order.

South Carolina have awarded attorneys' fees from the settlement funds created in analogous ERISA class actions.[5]

(3)     With those decisions in mind, Plaintiffs considered fee-shifting pursuant to § 1132(g) to be inappropriate as the fee award funding mechanism. Instead, consistent with the cited precedents, Plaintiffs believe the common fund practice to be the appropriate and fair method for Plaintiffs' Counsel to apply for a fee award in this Action. Moreover, when Defendants negotiated the Settlement, they made it clear to the mediator and to Plaintiffs' Counsel that any settlement would need to involve a common fund for the Class out of which any award of Plaintiffs' attorneys' fees and expenses would need to be paid.

**B.     The Fee Award Should Be Based on the Percentage of The Settlement Fund**

Courts have traditionally used two methods of determining the amount of fees to award attorneys from a common settlement fund: the lodestar/multiplier method, and the percentage-of-recovery method.  *See In re WorldCom, Inc. ERISA Litigation* , No.02 Civ. 4816(DLC), 2004 WL 2338151, at *10 (S.D.N.Y. Oct. 18, 2004) ("*WorldCom I*").  Under the first method, the court determines the "lodestar," or number of hours expended on the case multiplied by the relevant hourly rates, based on counsel's submissions.  The lodestar is then adjusted up or down (a "multiplier") to reflect various factors, especially the risk assumed by the lawyers.  4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 14:5 (4th ed. 2002); *WorldCom I*, 2004 WL 2338151, at *10.

---

[5] *See DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *7 (D.S.C. Dec. 6, 2013); *George v. Duke Energy Ret. Cash Balance Plan*, No. 8:06-CV-00373-JMC, 2011 WL 13218031, at *2 (D.S.C. May 16, 2011); *Anselmo v. W. Paces Hotel Grp., LLC*, No. 9:09-CV-02466-DCN, 2012 WL 5868887, at *4 (D.S.C. Nov. 19, 2012).  *See also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101, 133 S. Ct. 1537, 1548 (2013); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007).

Under the second method—the percentage-of-recovery method—the fee calculation is more straightforward.  As in a typical contingency fee representation, the fee is calculated as a percentage of the recovery. 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 14:6, at 550 (4th ed. 2002); *WorldCom I*, 2004 WL 2338151, at *10.  In cases such as this, where there is a settlement fund obtained for the common benefit of the class, the United States Supreme Court consistently calculates attorney fees on a percentage-of-the-fund basis.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

In the Fourth Circuit, a district court has discretion in a common fund case to calculate attorneys' fees based on either the percentage-of-the-fund or lodestar/multiplier method. *DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *7 (D.S.C. Dec. 6, 2013) (citing *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 463-64, nn. 3-4 (S.D.W. Va. 2010)).  However, "[t]he trend among most courts seems to be towards favoring the percentage-of-the-fund approach … because it 'better aligns the interests of class counsel and class members'" by rewarding counsel for "efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case to inflate the amount of attorney's fees on an hourly basis." *Id.* at *6 (citing *Kay Co.* 749 F. Supp. 2d at 461).

It is worth noting, however, that in some cases the courts "cross check" the result of the percentage-of-the-fund award against the "lodestar" approach.  As the court stated in *DeWitt*:

> Many courts that have used the [percentage-of-the-fund] method also use a modified form of the lodestar method to perform a "cross-check" to ensure that the percentage award is fair and reasonable.

2013 WL 6408371, at *7.

In sum, the percentage method has overwhelming judicial and scholarly support and is appropriate for the Court to employ here.  Here, a "cross check" of the percentage-of-the-fund

award against the "lodestar" approach further supports the fairness and appropriateness of the percentage-of-the-fund approach. *See supra* at 4 and Joint Declaration at 17-20.

###    C.    The Requested Fees Are Reasonable as Measured by The Fourth Circuit's *Barber* Factors

Pursuant to Local Civil Rule 54.02(A) DSC, "[a]ny petition for attorney's fees shall comply with the requirements set out in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978)" which specifies the following factors for analysis:

> (1) The time and labor expended; (2) The novelty and difficulty of the questions raised; (3) The skill required to properly perform the legal services rendered; (4) The attorney's opportunity costs in pressing the instant litigation; (5) The customary fee for like work; (6) The attorney's expectations at the outset of the litigation; (7) The time limitations imposed by the client or circumstances; (8) The amount in controversy and the results obtained; (9) The experience, reputation and ability of the attorney; (10) The undesirability of the case within the legal community in which the suit arose; (11) The nature and length of the professional relationship between attorney and client; and (12) Attorneys' fees awards in similar cases.

*Barber,* 577 F.2d at 226, n. 28. *See also McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-CV-03884-MBS, 2015 WL 5037836, at *2 (D.S.C. Aug. 26, 2015); *Brown v. Charles Schwab & Co.*, No. 2:07-CV-03852-DCN, 2011 WL 13199227, at *2 (D.S.C. July 26, 2011).

There is not an exact manner in which the *Barber* factors should be considered and applied. *Monster Daddy v. Monster Cable Prod., Inc.*, No. CIV.A. 6:10-1170-MGL, 2014 WL 1094550, at *3 (D.S.C. Mar. 19, 2014). "Although the Court is to review all twelve *Barber* factors, it need only make specific findings as to the factors it determines are relevant to its determination." *Id.* (citing to *E.E.O.C. v. Service News Co.,* 898 F.2d 958, 965 (4th Cir.1990)). Regardless, each of the twelve *Barber* factors supports the fee requested here.

###    1.    The Time and Labor Expended

Plaintiffs' Counsel dedicated very substantial effort to this litigation prior to and after it was filed in February 2016. As set forth in the accompanying Joint Declaration, the litigation has

been hard-fought, entailing complex motion practice, extensive fact discovery, submission of expert reports, and mediation and negotiations.  In all, Plaintiffs' Counsel devoted more than 7,330 hours to successfully investigating and prosecuting the Action and pursuing the Settlement, and advanced expenses in the amount of $302,583.74 since the Action's inception.  *See* Joint Decl. at 17-21 and Exhibits C, D, G, & H to Joint Decl.

**a.**    **The Settlement Was Achieved After Substantial Litigation**

Plaintiffs are participants in the Plan.  Two Plaintiffs initiated this Action individually and on behalf of all persons similarly situated by filing a complaint on February 26, 2016 in the United States District Court for the District of South Carolina (the "Court").  The complaint alleged that Defendants David R. Schools, William A. Edenfield, Jr., Robert G. Masche, Joseph T. Newton III and Burton R. Schools (the "Piggly Wiggly Defendants") functioned as fiduciaries of the Plan during the Class Period.  The complaint alleged that the Piggly Wiggly Defendants breached their fiduciary obligations under the Employee Retirement Income Security Act, as amended ("ERISA"), and committed other violations of ERISA.  The complaint further alleged that Defendants Joanne Newton Ayers and Marion Newton Schools (the "Noteholder Defendants") participated in violation of ERISA in the repayment of certain notes payable.

The Piggly Wiggly Defendants and the Noteholder Defendants filed Motions to Dismiss on May 6, 2016.  On May 23, 2016, all four Plaintiffs filed the First Amended Complaint (the "Complaint").

Count One of the Complaint asserts claims pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a), against the Piggly Wiggly Defendants for various breaches of fiduciary duty in their roles as members of the Plan Committee, members of the Company's Board of Directors, and Plan Trustees, including the claim that the Piggly Wiggly Defendants should have changed the Board and management of the Company during the early part of the Class Period

and that the Piggly Wiggly Defendants engaged in improper self-dealing transactions. Count Two asserts claims pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a), against the Piggly Wiggly Defendants for various breaches of fiduciary duty in connection with not bringing derivative actions against the management and Board of the Company. Count Three asserts claims pursuant to ERISA §§ 405 and 409, 29 U.S.C. §§ 1105 and 1109, against the Piggly Wiggly Defendants based upon their liability as alleged co-fiduciaries for those acts and omissions complained of in the other counts. Count Four asserts claims pursuant to ERISA §§ 406(a)-(b) and 409, 29 U.S.C. §§ 1106(a)-(b) and 1109, against the Piggly Wiggly Defendants for engaging, directly or indirectly, in certain transactions prohibited under ERISA. Last, Count Five asserts claims against all the Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for injunctive and equitable relief for various alleged acts and omissions in violation of ERISA as set forth in the other Counts.

On June 20, 2016, the Piggly Wiggly Defendants and the Noteholder Defendants filed motions to dismiss the Complaint. On September 19, 2017, the Court granted in part and denied in part these Motions to Dismiss and issued a detailed Order. On October 3, 2017, the Piggly Wiggly Defendants and the Noteholder Defendants filed Answers to the Complaint. On November 3, 2017, the Court entered its Amended Scheduling Order.

Thereafter, the parties engaged in comprehensive discovery, including negotiating discovery protocols, exchanging discovery related correspondence, serving and responding to document production requests and interrogatories, reviewing produced documents, serving *subpoenas duces tecum* on twenty-eight third parties and reviewing the documents produced in response to them, taking depositions of fifteen individuals (parties and non-parties), and submitting expert reports. In conjunction with this discovery, Plaintiffs' Counsel established an electronic document depository and implemented a system of coding and categorizing documents relevant to

the claims in the Complaint.  This assisted Plaintiffs' Counsel in reviewing the voluminous document production made by the Defendants and third parties.  Plaintiffs' counsel also identified expert witnesses and coordinated the production of expert reports.

> **b.    Plaintiffs' Counsel Engaged in Mediation and Settlement Negotiations**

The negotiations leading to the Settlement also required significant time and effort by Plaintiffs' Counsel. These negotiations, were conducted in an in-person mediation with mediator Thomas J. Wills, Esq., and continued thereafter with the mediator's assistance.  In connection with the formal session, Plaintiffs' Counsel prepared a mediation submission concerning the key issues in the case, including the claims, defenses, discovery, damages, and available insurance coverage, which was presented to the mediator and provided to defense counsel. Joint Decl. at 8.

> **c.    Number of Hours Spent Attests to Plaintiffs' Counsel's Extensive Effort**

The number of hours spent by Plaintiffs' Counsel demonstrates the extensive effort they put forth.  Through July 29, 2018, Plaintiffs' Counsel spent over 7,330 hours on this Action. *See* Exhibits C & D to Joint Declaration.  The cumulative lodestar of Plaintiffs' Counsel through that date is $3,181,169.90.  *See id.*  Accordingly, the time and labor expended by Plaintiffs' Counsel in prosecuting this highly complex Action support the requested fee.

> **2.    The Novelty and Difficulty of the Questions Raised**

This case, like many other ERISA class actions, involves complex legal and factual issues. *See, e.g.*, *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (finding that "[f]iduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [Global Crossing's] business practices would be issues for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved").

11

The Action presented challenging issues, including:

- **Complex legal theories.** ERISA is a highly-specialized and complex area of the law, and the claims brought here – breaches of duty by the Plans' fiduciaries and other violations of ERISA – involve the application of these complicated legal theories to the unique facts of this Action.

- **Difficulty of establishing liability.** Defendants have vigorously defended this case at all stages of its litigation, and Plaintiffs would face significant defenses should the case go to trial. Defendants assert that (a) the Company's financial losses were primarily due to the Great Recession, significantly increased competitive pressures generated by Wal-Mart and other well-capitalized grocery store chains, and other factors outside of their control; (b) during the relevant time period, the Company engaged multiple outside experts to analyze and recommend changes to the Company's business, which recommendations were implemented by the Piggly Wiggly Defendants; but the Company could not be turned around, despite the Piggly Wiggly Defendants' best efforts; (c) with the assistance of outside experts, the Company sold substantially all of its assets, which was the best possible outcome for the Company and the Plan participants that could have been achieved under the difficult circumstances the Company was facing; (d) as of March 2010 or March 2011, it was premature to conclude that a change in the Board's or top management's composition was needed in light of the significant changes being implemented by the Board and top management to turn the Company around; (e) it is speculative to assert that a change in the Company's Board of Directors or top management would have altered the Company's future performance; (f) the compensation and benefits provided to the Piggly Wiggly Defendants were within the range of reasonableness; (g) the rents paid by the Company to the related-party landlord were reasonable and not excessive; (h) the three Piggly Wiggly Defendants' ownership of indirect interests in the landlord was appropriate; and (i) the notes payable transaction benefited the Plan, and thereby the Plan's participants and beneficiaries, and did not violate ERISA.

- **Difficulty of establishing damages.** Damage assessments by the finder of fact often result in a battle of the experts, including, as anticipated here, where the parties disagree as to whether and when one of the alleged breaches occurred, specifically the claim that Defendants should have changed the composition of the Company's Board and management.

- **Vigorous defenses.** Defendants were represented by attorneys with many years of ERISA litigation and trial experience, and had significant resources, including a fiduciary liability policy, with which to prepare and present their defenses.

- **Risk of appeal.** Even if Plaintiffs won at trial, it was possible that trial would have been followed by post-trial motions as well as an appeal to the Fourth Circuit and the possibility of a petition for a writ of certiorari.

- **Decision tree.** Applying a standard "decision tree" analysis to this case yielded the possibility that Plaintiffs could end up losing. Defendants asserted numerous factual and legal defenses to this suit, which, if successful, could have resulted either in a judgment in Defendants' favor or a very small recovery for the Class. A loss at any stage – such as at summary judgment or trial – could have been fatal to Plaintiffs' Action, and Plaintiffs' Counsel would be left without the possibility of obtaining payment for their significant commitment of time and expenses.

Joint Decl. at 11-13.

As the parties' briefing of Defendants' Motions to Dismiss illustrated, the Action presented some novel legal issues. These included whether the failure of Plan trustees to change the plan sponsor's board of directors and management states a claim for breach of fiduciary duty under ERISA and whether a breach of fiduciary duty claim under ERISA based on an alleged failure by Plan trustees to bring a derivative action can be brought where the applicable state law derivative action remedy had not been pursued.

Plaintiffs needed to devote substantial resources to overcome Defendants' litigation efforts. Despite the magnitude of the litigation, the complexity in the law, the novel legal issues, and the vigorous defense mounted by the Defendants at every stage, Plaintiffs' Counsel successfully navigated this case to a significant settlement. Thus, the second *Barber* factor supports the fee award requested here.

3.    **The Skill Required to Perform the Legal Services Rendered and the Experience, Reputation and Ability of the Attorneys (the Third and Ninth Barber Factors)**

As noted above, this was a highly complex case that presented difficult factual, procedural, and legal issues, which required a high degree of expertise in complex ERISA and class action matters. Plaintiffs' Counsel collectively provided the necessary expertise garnered from their experience serving as counsel in numerous ERISA and other class action cases. *See* Joint Declaration.

13

The quality of opposing counsel is also an important factor in evaluating the caliber of work performed by Plaintiffs' Counsel. *Global Crossing*, 225 F.R.D. at 467 (quoting *In re Warner Commc'ns Secs. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986)). Defendants are represented by well-recognized law firms that vigorously advocated their defenses. The ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition from such reputable firms, with great collective resources, confirms the quality of Plaintiffs' Counsel's representation. Plaintiffs' Counsel possessed and effectively utilized the requisite skill to provide excellent legal services for the Class. Thus, both the third and ninth *Barber* factors each support the fee award requested.

### 4. The Attorney's Opportunity Costs in Pressing the Instant Litigation

Plaintiffs' counsel has expended considerable time and money in litigating this case. Through July 29, 2018, Plaintiffs' Counsel devoted more than 7,330 hours over more than three years towards successfully investigating and prosecuting this Action and pursuing the Settlement,[6] and advanced expenses in the amount of $302,583.74 since its inception (Joint Decl. at 17-21). Plaintiffs' counsel have busy professional careers and other professional matters on which time could be spent. As such, the fourth *Barber* factor is satisfied.

### 5. The Customary Fee for Like Work and Attorneys' Fees Awards in Similar Cases (the Fifth and Twelfth *Barber* Factors)

The fee requested is well within the percentage range that courts have awarded in comparable ERISA company stock cases in this and other circuits, as well as what courts have awarded in class litigation in this Circuit generally. *See, e.g.*, *DeWitt*, 2013 WL 6408371, at *12 (approving a one-third percentage fee and noting "a one-third contingency fee is reasonable and

---

[6] Certain of Plaintiffs' Counsel began working on the Action in 2015, many months before the first complaint was filed in February 2016.

customary in employment cases in South Carolina."); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 574 (D.S.C. 2015) (approving a 39.57% common fund fee in ERISA action); *Smith v. Krispy Kreme Doughnut Corp.,* 2007 WL 119157, at *2 (M.D.N.C. Jan.10, 2007) (unpublished) ("In this jurisdiction, contingent fees of one-third (33.3%) are common."); *Spann v. AOL Time Warner Inc.*, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) (33.33% of $2.9 million settlement fund); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (33.33% of $35 million settlement fund, noting that "Courts have [] awarded percentage fees of one-third or higher in ERISA company stock cases in appropriate circumstances, and especially when, as here, the fund is not a 'mega' recovery."). *See also, e.g.*, *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. May 31, 2012) (awarding one-third of common fund); *In re Merck & Co. Vytorin ERISA Litig.*, 2010 WL 547613 (D.N.J. Feb. 9, 2010) (same); *Morrison v. Moneygram Int'l, Inc.*, No. 08-cv-1121 (D. Minn. May 20, 2011) (one-third); *Coppess v. Healthways, Inc.*, No. 10-cv-109 (M.D. Tenn. Apr. 25, 2011) (33.3%); *In re Radioshack Corp. "ERISA" Litig.*, No. 08-cv-1875 (N.D. Tex. Feb. 8, 2011) (33.3%); *Moore v. Comcast Corp.*, No. 08-cv-773 (E.D. Pa. Jan. 24, 2011) (awarding 33% fee); *Graden v. Conexant Sys., Inc.*, No. 05-cv-695 (D.N.J. Sept. 11, 2009) (33% fee); *Milliron v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 101201, at *24 (D.N.J. Sept. 10, 2009), aff'd, 423 F. App'x 131 (3d Cir. 2011) (awarding 33.3% fee); *In re Syncor ERISA Litig.*, No. 03-cv-2446 (C.D. Cal. Mar. 30, 2009) (33.3%); *In re MBNA Corp. ERISA Litig.*, No. 05-cv-429 (D. Del. Mar. 27, 2009) (33%); *In re Elec. Data Sys. Corp. ERISA Litig.*, No. 03-cv-126 (E.D. Tex. Aug. 6, 2008) (33.3%); *Eslava v. Gulf Tel. Co.*, No. 04- cv-297 (D. Ala. Nov. 16, 2007) (35%); *In re Aquila ERISA Litig.*, No. 04-cv-865 (W.D. Mo. Nov. 29, 2007) (33%).

Moreover, in the District of South Carolina, "[m]any courts that have used the [percentage of the fund] method [in fee calculation] also use a modified form of the lodestar method to perform a "cross-check" to ensure that the percentage award [from the common fund] is fair and

reasonable." *Dewitt*, 2013 WL 6408371 at \*7.  The cross-check is not designed to be a "full-blown lodestar inquiry," but an estimation of the value of counsel's investment in the case. *Third Cir. Task Force on Selection of Appointed Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (advising courts to dispense with review of detailed time records and rely instead on summaries).  Here, the lodestar method confirms the reasonableness of the percentage fee sought by Plaintiffs' Counsel, as counsel's one-third fee request represents a very significant discount to their lodestar if the Defendants' low-end estimate of the Additional Cash Amounts is paid into the Settlement Fund and a smaller but still substantial discount to their lodestar if the Defendants' high-end estimate of the Additional Cash Amounts is paid into the Settlement Fund.

### a.       Plaintiffs' Counsel's Rates and Hours Are Reasonable

To calculate the lodestar amount, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Because the case has involved motion practice, extensive fact discovery, submission of expert reports, and settlement negotiations, Plaintiffs' Counsel have devoted considerable time to this litigation.

Plaintiffs' Counsel's rates are well within the range of rates typically charged in complex class action cases.  Plaintiffs' Counsel's rates vary between attorneys and between paralegals, depending on geographic location and experience level.  The rates for the individual attorneys and paralegals are set forth in Exhibits C & D to the Joint Declaration.

The hourly rates used are within the range of counsel's current rates, as sanctioned by the Fourth Circuit. *Edmonds v. United States,* 658 F. Supp. 1126, 1146 (D.S.C. 1987) ("[T]he use of historical rates is not within the discretion of the Court unless some adjustment is made 'to counterbalance the effect of inflation and foregoing interest on the value of the fee.' The Fourth Circuit suggests… that one appropriate adjustment for these effects is to

16

use current hourly rates, rather than historical rates." (citing to *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986)).

In addition, Plaintiffs' Counsel's rates are commensurate with Greenville, South Carolina and Seattle, Washington area practitioners' rates. In the Fourth Circuit, the hourly rate for use in an attorney's fee calculation should be "the prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).

By way of reference, Plaintiffs' Counsel's current rates are most likely below those of the Piggly Wiggly Defendants' counsel and of other firms that defend ERISA class actions. In a now 4-year old 2014 filing in the Chapter 11 case of AMR Corporation (Case No 11-15463, Dkt. 11633), Groom Law Group, Chartered reported partner billing rates between $600 and $910 per hour and associate billing rates between $320 and $595 per hour.

The total lodestar for Plaintiffs' Counsel through July 29, 2018 is $3,181,169.90. Implementing the Settlement and Plan of Allocation will require further attorney oversight and paralegal involvement. This time is not included in the lodestar calculation.

### b. The Fee Request Is Reasonable

Courts often approve fee awards that yield a multiplier to the total lodestar. *See, e.g.*, *Smith v. Krispy Kreme,* 2007 WL 119157, at *2 (1.6 multiplier); *In re Bristol Myers Squibb Co. ERISA Litig.,* No. 02-10129 (S.D.N.Y. Oct. 12, 2005) (3.8 multiplier); *Global Crossing*, 225 F.R.D. at 469 (2.6 multiplier); *In re WorldCom*, Inc. ERISA Litigation, 2005 WL 3101769, at *6 (S.D.N.Y Nov. 21, 2005) (1.3 multiplier); *Spann v. AOL Time Warner*, No. 02-8238, 2005 WL 1330937, at *3 (S.D.N.Y. June 7, 2005) (2.19 multiplier). *See also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) (5.0 multiplier in ERISA defined benefit case). Courts in circuits across the nation have commonly awarded substantial multipliers in ERISA company stock class actions to, among other things, account for the risk of litigation. *See, e.g., In re Xcel*

*Energy Inc. Secs., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) (4.7); *In re Household Int'l Inc. ERISA Litig.*, No. 02-7921 (N.D. Ill. Nov. 22, 2004) (4.65); *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-1398 (D.N.J. Aug. 29, 2005) (3.3); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613 (D.N.J. Feb. 9, 2010) (2.786); *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, No. 01-03913 (S.D. Tex. July 24, 2006) (2.297); *In re Schering-Plough Corp. Litig.*, No. 08-1432 (D.N.J. May 31, 2012) (1.6).

Here, the requested fee results in a ***negative multiplier*** to Plaintiffs' Counsel's lodestar, even without taking into account additional time that will be necessary to see this case through to the end. The lodestar cross-check, therefore, strongly confirms the reasonableness of the fee requested here. *See George v. Duke Energy Ret. Cash Balance Plan*, No. 8:06-CV-00373-JMC, 2011 WL 13218031, at *9 (D.S.C. May 16, 2011) (lodestar multiplier of less than one was "clearly well within the range commonly approved in class actions."); *In re Bear Stearns Co. Inc. Secs., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (multiplier below one is "a strong indication of the reasonableness of the proposed fee." (citing *In re Blech Secs. Litig., No. 94-7696*, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002))).

### 6.    The Attorney's Expectations at the Outset of the Litigation

In complex class action cases, the risk of receiving little or no recovery is a major factor in awarding attorney's fees. *Phillips v. Crown Cent. Petroleum Corp.*, 426 F. Supp. 1156, 1170 (D. Md. 1977). In undertaking class representation, attorneys have, at times, devoted substantial resources in both time and advanced costs, only to eventually lose the case despite their advocacy. *See, e.g., Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002) (reversing class certification); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) (affirming dismissal of complaint without leave to replead).

18

From the Action's outset, Plaintiffs' Counsel has understood that its receipt of attorneys' fees, and the amount thereof, would be contingent on its success in obtaining a final judgment or settlement in the Action.  For the reasons described above, Plaintiffs' Counsel has recognized from the inception of the Action that there was a risk of receiving little or no recovery.

### 7.     The Time Limitations Imposed by the Client or Circumstances

Due to the period of time permitted for discovery by the Action's scheduling order, Plaintiffs' Counsel was required to seek and review a large volume of documents, take or participate in fifteen depositions, and identify experts and obtain their reports within a matter of a few months, a time period considerably shorter than the time periods initially suggested by the Parties to the Court.  The time-intensive nature of the work required of Plaintiffs' Counsel in the Action supports the proposed fee award.

### 8.     The Amount in Controversy and the Results Obtained

Plaintiffs believed that the maximum possible damages in this case were approximately $30 million, assuming that Plaintiffs had been able to prove all their allegations.  If the Defendants' arguments had been accepted by the Court, however, recoverable damages could have fallen all the way down to zero.  Moreover, even if Plaintiffs had been able to obtain a judgment against the Defendants, Plaintiffs' ability to collect the full judgment amount from the Defendants was uncertain.

Plaintiffs' Counsel, therefore, believe that through the Settlement they have obtained an excellent result of behalf of the Settlement Class.

### 9.     The Undesirability of the Case within the Legal Community in Which the Suit Arose

Thousands of Piggly Wiggly Carolina Company, Inc. employees and former employees suffered the loss of millions of dollars of total value in the Plan, but to Plaintiffs' Counsel's

knowledge, no other attorneys seriously explored undertaking the Action prior to Plaintiffs' Counsel's decision to do so. Plaintiffs' Counsel faced considerable risk in bringing the Action. ERISA class actions are difficult to prosecute, and this case involved complex factual and legal issues, even within the general context of ERISA actions. As described above, the risk of non-recovery was serious.

Even if Plaintiffs' Counsel were successful in obtaining a sizable judgment at trial, they faced considerable uncertainty as to their ability to collect on that judgment. Here, the Defendants are all individuals. Plaintiffs lack full and complete information concerning the specific amount or nature of the Defendants' assets. While the Piggly Wiggly Defendants had fiduciary liability insurance coverage with respect to the fiduciary breach claims in the Complaint, the amount of this coverage was significantly reduced by the attorneys' fees and litigation expenses incurred by the Piggly Wiggly Defendants, and continued litigation could have further reduced or quite possibly eliminated this coverage. A failure to settle would have created a significant risk that insufficient or no insurance coverage would be available to pay for any judgment that Plaintiffs might obtain against the Piggly Wiggly Defendants.

Considering the present and time value of money, the probability of lengthy and costly litigation in the absence of settlement, the risk that Plaintiffs would not succeed in proving liability against the Defendants, the range of possible recovery at trial, and the uncertainty of collecting on any significant judgment, it should not be surprising that no other attorneys decided to bring a similar action on behalf of the Plan's participants and beneficiaries.

### 10. The Nature and Length of the Professional Relationship between Attorney and Client

To Plaintiffs' Counsel's knowledge, prior to being engaged to conduct this Action, Plaintiffs' Counsel had no professional relationship with any member of the class. There is no

reason to suggest that the Plaintiffs are dissatisfied with the representation they have received from Plaintiffs' Counsel in this Action.

The Class Notice was disseminated to the Class on July 2, 2018, and this notice advised the Settlement Class members of Plaintiffs' Counsel's fee application and request for reimbursement of litigation expenses. *See* Exhibit A to the Joint Declaration. Although the August 10, 2018 deadline for objections to the requested fee has not yet passed, as of Friday, July 27, 2018, no written objections to the fee request have been received; the only objections have concerned the overall monetary amount of the settlement.

### D.    The Requested Expenses Are Reasonable

Litigating complex cases such as this requires counsel to advance significant litigation expenses. Through July 29, 2018, Plaintiffs' Counsel have advanced $302,583.74,[7] and are entitled to reimbursement for their reasonable expenses advanced in this Action. Joint Decl. at 21 and Exhibits G & H to Joint Decl. *See Brown*, 2010 WL 11534521, at *6 ("Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (citing *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008))).

Here, Plaintiffs' Counsel's expenses include costs relating to maintenance of an electronic document database; deposition transcripts; expert fees and expenses; travel related expenses; postage and delivery expenses; computer research; filing fees; mediator fees; notice administrator fees and expenses; and photocopying. These expenses were reasonable and necessary in this

---

[7]    In their charts of expenses, both Wyche and Keller Rohrback have included an estimate of the likely costs for travel expenses involved in attending the Final Approval Hearing.

litigation, and have been expended for the direct benefit of the Class.   Joint Decl. at 21.
Accordingly, Plaintiffs' Counsel requests that they be reimbursed for their litigation expenses
incurred in prosecuting this Action.

## III.     CONCLUSION

The attorneys' fees requested by Plaintiffs' Counsel will reasonably compensate them for
the risks they assumed, and the time and resources they committed, to obtain the excellent result
achieved here.   Plaintiffs' Counsel respectfully request that the Court:  (1) award attorneys' fees
in the amount of one-third of the sum of the Original Cash Amount and aggregate Additional Cash
Amounts deposited in the Settlement Fund; and (2) order reimbursement of $302,583.74 in
expenses advanced by Plaintiffs' Counsel as reasonable and necessary litigation expenses.

Dated:  July 31st, 2018                              Respectfully submitted,

                                                     WYCHE, P.A.

                                                     s/John C. Moylan, III
                                                     _____

                                                       John C. Moylan, III (D.S.C. Id. No.  5431)
                                                       Alice W. Parham Casey (D.S.C. Id. No. 9431)
                                                       801 Gervais Street, Suite B (29201)
                                                       P. O. Box 12247
                                                       Columbia, SC 29211-2247
                                                       Phone:  803-254-6542; Fax:  803-254-6544
                                                       jmoylan@wyche.com
                                                       tcasey@wyche.com

                                                       Henry L. Parr, Jr. (D.S.C. Id. No. 2984)
                                                       Eric B. Amstutz (D.S.C. Id. No. 0942)
                                                       Wade S. Kolb, III (D.S.C. Id. No.11485)
                                                       44 East Camperdown Way
                                                       Greenville, S.C. 29601
                                                       Phone:  864-242-8200; Fax:  864-235-8900
                                                       hparr@wyche.com
                                                       eamstutz@wyche.com
                                                       wkolb@wyche.com

KELLER ROHRBACK, LLP

Gary A. Gotto (Admitted *pro hac vice*)
Keller Rohrback LLP
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012
Phone: 602-248-0088; Fax: 602-248-2822
ggotto@kellerrohrback.com

Erin M. Riley (Admitted *pro hac vice*)
David J. Ko (Admitted *pro hac vice*)
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Phone: 206-623-1900; Fax: 206-623-3384
eriley@kellerrohrback.com
dko@kellerrohrback.com

*Attorneys for Plaintiffs*