# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Dana Spires, *et al.*, | ) | Civil Action No. 2:16-616-RMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **FINAL JUDGMENT AND** |
| | ) | **APPROVING CLASS ACTION** |
| David R. Schools, *et al.*, | ) | **SETTLEMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiffs' Motion for Approval of Settlement, Plan of Allocation, Certification of the Settlement Class, and Appointment of Class Counsel (Dkt. No. 144) and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (Dkt. No. 146). For the reasons set forth below, the Court grants the Motions.

Plaintiffs are former employees of Piggly Wiggly Carolina Company, Inc. ("PWCC") or Greenbax Enterprises, Inc. (collectively, the "Company"). They are participants in the PWCC and Greenbax Employee Stock Ownership Plan and Trust (the "Plan") and assert various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. 93-406, 88 Stat. 829, for themselves and for others similarly situated. On May 23, 2018, this Court entered an Order Preliminarily Approving Class Settlement, Conditionally Certifying the Settlement Class, Approving Notice Procedures, Preliminarily Approving the Plan of Allocation, and Setting a Fairness Hearing for August 31, 2018 (the "Preliminary Order"). (Dkt. No. 137.) The Preliminary Order granted preliminary approval of a proposed Class Action Settlement Agreement (the "Settlement")[1] between Plaintiffs, the Settlement Class members, and Defendants William A.

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meaning as ascribed to them in the Settlement Agreement.

Edenfield, Robert G. Masche, Joseph T. Newton, III, Burton R. Schools, David R. Schools, the Piggly Wiggly Carolina Company, Inc., and the Greenbax Enterprises, Inc., Employee Stock Ownership Plan and Trust Committee (collectively the "Piggly Wiggly Defendants"). A Fairness Hearing on Final Approval of the Settlement was held on August 31, 2018.

Having read and considered the documents, papers, and evidence submitted in this matter, and having conducted a hearing regarding the matters set forth herein, and good cause appearing, the Court now finds and orders as follows:

I. **Settlement Class Certification**

To be certified, a proposed class must satisfy the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. *See EQT Prod. Co. v. Adair,* 764 F.3d 347, 357 (4th Cir. 2014). A proposed class must also fit one of the three categories in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(1), which requires that:

> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Plaintiffs bear the burden of demonstrating compliance with Rule 23, "but the district court has an independent obligation to perform a rigorous analysis to ensure that all of the prerequisites have been satisfied." *Adair*, 764 F.3d at 358. Finally, "[s]ettlement is relevant to a class certification." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 619 (1997).

**A. Numerosity**

Numerosity must be decided based on the facts and circumstances of the case. *See In re: Mi Windows & Doors Inc.*, 2015 WL 12850547, at *4. The Fourth Circuit has previously held that approval of a class with 480 members "easily satisfy[ied] the numerosity requirement." *Cent.*

*Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993). Here, there are approximately 6,596 Settlement Class members, satisfying the numerosity requirement.

### B. Commonality

Commonality requires the "existence of 'some common question of law or fact.'" *Case v. French Quarter III LLC*, No. 2:12-CV-02518-DCN, 2015 WL 12851717, at *4 (D.S.C. July 27, 2015) (citation omitted). This action involves issues common to each member of the Settlement Class because all claims concern the common issue of the fiduciary responsibility owed by the Piggly Wiggly Defendants to the Settlement Class members. *See, e.g.*, *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Therefore, the prerequisite of Rule 23(a)(2) is met.

### C. Typicality

The typicality requirement demands that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quotation omitted). The Plaintiffs' claims here are typical of those in the Settlement Class. Each Plaintiff was a participant in the Plan during the Class Period and the Plaintiffs sustained the same type of alleged injury as the Settlement Class, namely, the breach of Defendants' alleged fiduciary duties. Other district courts have found typicality in ERISA class actions where defendants allegedly breached their fiduciary duty in the management of a company plan. *See, e.g. In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004); *Koch v. Dwyer*, No. 98 CIV. 5519 (RPP), 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001). Therefore, the typicality requirement of Rule 23(a)(3) is met.

### D. Adequacy of Representation

Named Plaintiffs must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.,* 200 F.R.D. 539, 561 (D.S.C. 2000). Regarding the first prong, Plaintiffs' Counsel has submitted evidence of their experience litigating both ERISA fiduciary class actions and class actions in general. (Dkt. Nos. 135-2 at 15; 145-5; 145-6.) Regarding the second prong, there is no reason to believe that there is any antagonism or conflict of interest between Plaintiffs and the Settlement Class, and both Plaintiffs and the absent Settlement Class members seem to share in the goal of maximizing recovery. Therefore, the Court finds that this requirement has been met.

### E. Rule 23(b)

Plaintiffs here request class certification under Rule 23(b)(1). An "action may be brought as a class action under Rule 23(b)(1) if individual adjudication of the controversy would prejudice either the party opposing the class, (b)(1)(A), or the class members themselves, (b)(1)(B)." *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 233 (D.S.C. 2009) *quoting Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir.1986). The Settlement Class meets this standard. Adjudication of the Named Plaintiffs' claims without certifying the class would potentially decide the interests of the absent Settlement Class members and, if Plaintiffs did not prevail, would potentially leave the absent Settlement Class members with a ruling on their rights. Further, failure to certify the class may prejudice the Defendants. Other district courts have held similarly in ERISA class actions. *See, e.g. In re Ikon Office Sols., Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) ("given the

nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.").

Therefore, class certification is appropriate under Rule 23(b)(1).

## II. Class Counsel

Under Rule 23(g)(1), a court certifying a class must appoint class counsel, and consider the work performed, counsel's experience and knowledge of the law, and the resources that counsel will commit. Fed. R. Civ. P. 23(g). As discussed above, Plaintiffs' Counsel has performed considerable work identifying and investigating the claims in this action, has experience in similar ERISA class actions, has demonstrated a knowledge of the applicable law, and has dedicated considerable resources. (Dkt. No. 145 at 20.) Therefore, Plaintiffs' Counsel, Wyche, P.A. and Keller Rohrback LLP, are appointed as Class Counsel.

## III. The Notice Program

Pursuant to the Preliminary Order, on June 17, 2018, the Legal Notice of Settlement was published in *The Charleston Post & Courier* and *The State* newspapers. (Dkt. No. 145 at 11.) Plaintiffs retained a class action administrator, and on July 2, 2018, the administrator mailed the Class Notice to the 6,596 Settlement Class members. (Dkt. No. 145-1 at ¶ 9.) According to Plaintiffs, approximately 95.6% of notices were sent to deliverable addresses and 293 notices were undeliverable. (Dkt. No. 144-1 at 18.) As required by the Preliminary Order, Plaintiffs published the Legal Notice in the two identified newspapers and mailed the Class Notice to all persons in the Settlement Class by no later than sixty days before the August 31, 2018, hearing. Preliminary Order at 5 – 6. Plaintiffs' local counsel, Wyche, P.A., additionally posted the Settlement Agreement and other relevant documents on its website and established a toll-free number to respond to Settlement Class inquiries. (Dkt. No. 145 at 10.) Class Counsel represented at the

Fairness Hearing that there were hundreds of visits to the website and over two hundred phone calls to the toll-free number regarding the Settlement.

As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure. Notice of the Settlement was given to the Class in accordance with the Preliminary Order, including direct mail, publication, and online publications. The Court also finds that the Legal Notice and Class Notice, both of which were substantially the same as those approved by the Preliminary Order, provided class members with accurate, fair and reasonable information regarding the Action and the Settlement. The form and manner of notice were the best practicable notice to members of the Class, and Plaintiffs delivered the mailed Class Notice to all Settlement Class members who could be identified with reasonable efforts. Finally, the Court finds that the form and manner of the notice satisfied due process.

### IV. Approval of Settlement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The court may approve such a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* Additionally, class members may object to the settlement. *Id.*

The Fourth Circuit has articulated a two part test to determine if a settlement is fair, reasonable and adequate. *See In re: Mi Windows & Doors Inc. Prod. Liab. Litig.* (Norton, J.), No. 2:12-MN-00001-DCN, 2015 WL 12850547, at *8 (D.S.C. July 22, 2015), *aff'd sub nom. In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218 (4th Cir. 2017). Fairness is determined by examining "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of ... class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Adequacy is determined by examining "(1) the relative strength of the

plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

### A. Fairness

#### i. Posture of the Case and Discovery

This case was filed on February 26, 2016. (Dkt. No. 1.) From that time, Plaintiffs and Defendants engaged in litigation for more than two years, including extensive fact discovery, depositions of fifteen fact witnesses, exchanging expert discovery and motion practice. (Dkt. No. 145 at 3.) By the time the parties reached a settlement, they had sufficient information to assess the strengths and weaknesses of their cases, and Class Counsel had a high level of familiarity with the legal and factual issues which enabled them to make an appraisal of the adequacy of the Settlement to provide meaningful relief to the Class. These factors are therefore met.

#### ii. The Negotiations and Experience of Class Counsel

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted). This action has been prosecuted by counsel with experience and competence in ERISA and class actions. (Dkt. Nos. 145-5; 145-6.) The parties reached agreement on major terms on April 13, 2018, after mediation with an experienced and respected mediator. (Dkt. No. 145 at 4.) Just months before trial and after substantial litigation, the settlement was reached through significant arm's-length negotiations. Furthermore, the Court finds the presence of good faith and the absence of collusion. There are no grounds to doubt the fairness nor are there obvious deficiencies in the Settlement, such as preferential treatment of Plaintiffs or segments of the class.

### B. Adequacy

*i. The Risk, Complexity, Expense and Expected Duration of Continued Litigation*

The Settlement affords an immediate remedy for the Settlement Class members while obviating the need for further expensive and time-consuming discovery, motion practice, litigation and appeals. While Plaintiffs' Counsel "believe strongly" in their claims, Defendants have a number of defenses that raise the risk that any recovered amounts may be less if the case went to trial. Furthermore, continued litigation would be expensive and may result in appeals, delaying any potential recovery by the Settlement Class members for years. (Dkt. No. 145 at 12.) This factor therefore weighs in favor of the adequacy of the settlement.

*ii. The Solvency of Defendants and the Likelihood of Recovery*

The risk of recovery of any ultimate judgment is a neutral factor here. While the Piggly Wiggly Defendants have fiduciary liability insurance regarding the fiduciary breach claims, Plaintiffs represent that this coverage has been significantly reduced by attorneys' fees and litigation expenses, and any further litigation may reduce or eliminate this coverage. (Dkt. No. 145 at 12 – 13.) The Court finds that any ultimate award at trial similar to the amount of the Settlement likely would be recoverable, yet a significantly larger ultimate award likely would not be recoverable. This risk of non-recovery is therefore a neutral factor in analyzing the Settlement.

*iii. Objections to the Settlement*

Finally, this Court considers objections to the Settlement. This Court has received eight letters, each from a former employee of the Company. Each objector wrote about the harm from the Defendants' alleged actions and how the Defendants' actions allegedly affected both their retirement accounts and perception of a company many had worked at for much of their professional lives. (Dkt. Nos. 139; 140; 141; 142; 143; 147; 148; 149.) Furthermore, one objector appeared at the hearing and spoke about the alleged harm caused by the Defendants.

Nonetheless, there are 6,596 potential Settlement Class members and only eight filed objections. As this Court has previously noted, "if only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re: Mi Windows & Doors Inc.*, 2015 WL 12850547, at *9 *quoting In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003). *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975) (approving settlement where five out of 253 objected to the settlement, including three original plaintiffs). The Court also does not find the objections persuasive when weighed against the other factors.[2]

The Court further finds that the settlement amount of $7.675 million to $8.65 million is reasonable under the circumstances of this case. Therefore, after considering the substantial benefits provided to the Settlement Class members by the Settlement, as well as the factors laid out above, the Court finds that the Settlement is fair, reasonable and adequate.

## V.    **Plan of Allocation**

The Plan of Allocation must also "meet the standards of fairness, reasonableness, and adequacy." *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009). The Plan of Allocation proposed here meets that test. While the Court will not detail all aspects of the Plan of Allocation it, generally, provides recovery to Settlement Class members on a *pro rata* basis according the decline in value of the Settlement Class members' respective shares of Company

---

[2] The objectors largely object to the amount of the Settlement. While the Settlement is potentially not as much as the Settlement Class members believe they are due at trial, because of the significant risks inherent in this litigation, the Court does not find this objection persuasive. Furthermore, six of the objectors request an admission of guilt. A settlement does not include an admission of guilt. Two objectors objected to the source of the funding for the Additional Cash Amounts, yet the Court finds it appropriate to include the proceeds from the sale of the insurance surety and real property. Finally, one objector states that the notices did not include how the assets would be divided. (Dkt. No. 148.) However, the Class Notice included a plan allocation summary. (Dkt. No. 145-1 at 14.)

stock held by the Plan.[3] (*See* Dkt. No. 136-6.) Similar plans have been approved by district courts. *See Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) (approving *pro rata* plan of allocation in class action); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006) (approving *pro rata* plan of allocation in Securities and ERISA class action). The Court therefore finds that the Plan of Allocation is fair, reasonable and adequate.

## VI.     Motion for Attorneys' Fees

Class Counsel requests a fee of one-third of the Settlement Fund. The aggregate amount of the Settlement Fund will be between $7.675 million and $8.65 million depending on the Additional Cash Amounts. Therefore, the requested attorneys' fees award is between $2,558,000 and $2,883,000. Furthermore, Class Counsel requests reimbursement of their out-of-pocket litigation expenses totaling $302,583.74.

Under the fee-shifting provisions of ERISA contained in 29 U.S.C. § 1132(g), a defendant generally is responsible for paying attorneys' fees and costs. Nonetheless, "[c]ourts routinely grant attorneys' fees" from a "common fund" in ERISA class actions. *See George v. Duke Energy Ret. Cash Balance Plan*, No. 8:06-CV-00373-JMC, 2011 WL 13218031, at *2 (D.S.C. May 16, 2011). Courts reason that allowing the parties to pre-determine total liability encourages settlement. *Id.* The Court finds it appropriate to include attorneys' fees and costs as part of the common fund here, especially as Defendants negotiated and agreed to the Settlement on the condition that it included a common fund out of which any attorneys' fees and costs would be paid. (Dkt. No. 146-1 at 6.)

---

[3] Further, all Settlement Class members participate in the Plan of Allocation in the same manner. The distribution takes place through the Plan to realize the tax advantages of the Plan. The Plan of Allocation also requires a *de minimis* recovery amount of $10.00 to limit administration costs on the recovery received by the Settlement Class. (*See* Dkt. No. 136-6.)

Reasonable attorneys' fees under Rule 23 are subject to court approval. Courts generally use one of two methods for assessing awards of attorney's fees in class action cases: (1) the percentage-of-the-fund method, relying on the test from *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 733 (3d Cir. 2001), or (2) the lodestar method, following standards from *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978). While the Court can choose either method, courts have recently "favor[ed] the percentage-of-the-fund approach to awarding attorney's fees in class action cases." *French Quarter III LLC*, 2015 WL 12851717, at *9. *See also In re Wachovia Corp. ERISA Litig.*, No. 3:09CV262, 2011 WL 5037183, at *3 (W.D.N.C. Oct. 24, 2011). This Court will therefore apply the percentage-of-the-fund method.

When reviewing the appropriate percentage-of-the-fund amount, courts review the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*French Quarter III LLC*, 2015 WL 12851717, at *10 *quoting Cendant Corp.*, 243 F.3d at 733.[4]

### A. The Size of the Fund

---

[4] Many courts also "cross-check" the lodestar amount to ensure a percentage-of-fund amount is fair and reasonable. *See DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *10 (D.S.C. Dec. 6, 2013) ("Many courts that employ the common-fund doctrine...compare the percentage of the fund to the lodestar calculation as a 'cross-check'...."). Class Counsel alleges their lodestar is $3,181,169.90. (Dkt. No. 145 at 17 – 18.) In calculating the reasonable hours and rates for the lodestar, this Court applies the twelve *Barber* factors. At the Fairness Hearing, the Court reviewed the *Barber* factors with Class Counsel and found that their fees were reasonable. The proposed one-third percentage-of-fund here results in a lower amount than the lodestar and therefore is reasonable based on a "cross-check."

Class Counsel received a beneficial result for class members, with the common fund totaling between $7.675 million and $8.65 million depending on the Additional Cash Amounts. This factor weighs in favor of the requested award of attorneys' fees.

### B. Objections

One Class Member objected in writing to the fee and expense request. (Dkt. No. 149.) At the Fairness Hearing, another objector spoke, noting that while he believed Class Counsel did a good job, he did not agree with all motions that were filed. As above, because of the small number of objections, this factor weighs in favor of Class Counsel's requested attorneys' fees.

### C. Skill, Efficiency and Time Dedication of Class Counsel and Complexity of the Litigation

As detailed above, Class Counsel demonstrated significant skill and efficiency in litigating this action. Class Counsel spent 7,330 hours litigating this action. (Dkt. No. 145 at 20.) Furthermore, the Court finds that this case involved complex questions of law and fact involving ERISA. *See Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("ERISA law is a highly complex and quickly-evolving area of the law. The novelty and difficulty of the questions raised tends to support the reasonableness of the requested fee award."). These factors weigh in favor of Class Counsels' requested attorneys' fees.

### D. Awards in Similar Cases

Class Counsel identifies multiple cases in which courts have awarded attorneys' fees of one-third, or higher, in ERISA class actions. *See, e.g. Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 574 (D.S.C. 2015) (awarding 39.75% of common fund in ERISA class action where Class Counsel recovered 16.88% of alleged past and future benefits) (collecting cases); *Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (awarding 33.33% of $2.9 million settlement fund). A one-third fee is therefore appropriate.

Therefore, because of the substantial work done by Class Counsel in this case, and the small number of objections, the Court finds that an attorneys' fee of one-third of the sum paid to the Settlement Fund is reasonable.

### E. Requested Expenses

"Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *Brown v. Charles Schwab & Co.*, No. 2:07-CV-03852-DCN, 2010 WL 11534521, at *6 (D.S.C. Nov. 9, 2010) (citation omitted). Class Counsel have submitted charts detailing $302,583.74 in out-of-pocket expenses in litigating this action, including copying, document retrieval, postage, legal research, conference calls, service of process, filing fees, travel, legal notice, and licensing for e-discovery software. (Dkt. Nos. 145-6; 145-7.) $302,583.74 in expenses is therefore reasonable.

### VII. Conclusion

For the foregoing reasons, the Court **CERTIFIES** the Settlement Class, **APPOINTS** Plaintiffs' Counsel as Class Counsel, **APPROVES** the Notice Program, **APPROVES** the Settlement as fair, reasonable, and adequate, **OVERRULES** the objections to the Settlement, **APPROVES** the Plan of Allocation, and **APPROVES** attorneys' fees and expenses.

### FINAL SETTLEMENT APPROVAL AND FINAL JUDGMENT

Based on the foregoing, IT IS HEREBY ADJUDGED, ORDERED AND DECREED that:

1) This Court has jurisdiction over the Settled Claims and the claims asserted in this proceeding, personal jurisdiction over the Settlement Class members, and subject matter jurisdiction to approve the Settlement.

2) This Court having found that the applicable requirements of Federal Rule of Civil Procedure 23 have been satisfied with respect to the Settlement and the Settlement Class as defined in the Settlement, the Court grants certification of the Settlement Class for settlement purposes.

3) Plaintiffs' Counsel are hereby appointed as class counsel for the Settlement Class pursuant to Fed R. Civ. P. 23 (g).

4) Notice given to the Class was reasonably calculated under the circumstances to apprise Settlement Class members of all material elements of the Settlement and their opportunity to object to, or to comment on, the Settlement and to appear at the Fairness Hearing. Notice to the Class Members was the best notice practicable under the circumstances and complied fully with the Federal Rules of Civil Procedure, the U.S. Constitution and South Carolina Constitution, and all applicable Rules of Court. Accordingly, the Court determines that all Settlement Class members are bound by this Judgment.

5) The Court hereby grants final approval to the Settlement and finds that it is fair, adequate, reasonable and in the best interests of the Settlement Class members. Judgment is hereby entered in accordance with the terms of this Judgment and the Settlement.

6) All Settlement Class members have released and forever discharged the Settled Claims. All Settlement Class members are permanently barred and permanently enjoined from asserting or prosecuting the Settled Claims. The Action and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice.

7) As part of the Settlement, and as set forth fully in the Settlement Agreement, a Settlement Fund will be established for the benefit of the Settlement Class, and an Original Cash Amount of $5,200,000 and certain Additional Cash Amounts shall be deposited into the Settlement Fund in accordance with the terms of the Settlement Agreement. The Additional Cash Amounts

are incorporated herein as defined in the Settlement Agreement. The value of these Additional Cash Amounts is estimated by the Defendants to range from $2.475 million to $3.45 million in the aggregate. The Settlement Fund shall be established and administered in accordance with the Settlement Agreement.

8) The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel are directed to arrange for the administration of the Settlement in accordance with its terms and provisions. Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Order and shall be considered separate from this Order.

9) Plaintiffs' Counsel are hereby awarded attorneys' fees pursuant to Fed R. Civ. P. 23(h), in the amount of one-third of the sum of the Original Cash Amount and the Additional Cash Amounts paid to the Settlement Fund, which amount the Court finds to be fair and reasonable, and $302,583.74 in reimbursement of Plaintiffs' Counsel's reasonable expenses incurred in prosecuting the Action. The attorneys' fees and expenses so awarded shall be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement, as provided in the Settlement Agreement. The Court hereby finds this award of fees and expenses is fair and reasonable and does not in any way undermine the fairness of the Settlement.

10) Without affecting the finality of this Judgment, the Court shall retain exclusive and continuing jurisdiction over this Action and the Parties to it, including all Class Members, to the full extent necessary to enforce the Settlement.

11) The Settlement is expressly incorporated herein by this reference, and will have the full force and effect of an order of this Court. The parties shall consummate the Settlement according to its terms.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

September 4, 2018
Charleston, South Carolina

-16-